UNITED STATES of America, Plaintiff,

v.

LEE WOOD CONTRACTING, INC.,
et al., Defendants.

Civ. No. 80–10045.

United States District Court,
E. D. Michigan, N. D.

Nov. 5, 1981.

Michael J. Hluchaniuk, Asst. U. S. Atty., E. D. Mich., Bay City, Mich., Ellen S. Ritteman, Asst. U. S. Atty., Melvyn B. Kalt, U. S. Army Corps of Engineers, Detroit, Mich., for plaintiff.

James Scott Wood, Bay City, Mich., for defendants Lee Wood Contracting, Inc., Leland Wood, Marvin Wood, Melvin Wood and Bernard Wood.

Milton E. Higgs, Bay City, Mich., for above-named defendants and defendant Jerome Wood.

MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

This action was brought by the United States Government seeking injunctive relief and the imposition of civil penalties against the defendant corporation and its officers for placing fill materials into waters of the United States without first seeking a permit from the United States Army Corps of Engineers.

■ The Court referred this matter to United States Magistrate Harvey D. Walker as Special Master to conduct a trial and to issue findings of fact, conclusions of law and a recommendation of judgment. The Magistrate presided over a two-day trial and on May 11, 1981, issued his Memorandum Opinion and Recommendation (herein-

after "report"), to which timely objections were filed by the government. The filing of timely objections requires this Court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *See United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *United States v. Walters*, 638 F.2d 947 (C.A.6, 1981); *Calderon v. Waco Lighthouse for the Blind*, 630 F.2d 352 (C.A.5, 1980).

In making its *de novo* review this Court has reviewed the transcript of the trial in this matter, *Hill v. The Duriron Co. Inc.*, 656 F.2d 1208, 1215 (1981), carefully examined the exhibits which were admitted into evidence at the trial, and reviewed all pleadings and documents on file with the Court.

*Review of Magistrate's Report*

The narrow issue before the Magistrate was whether the area where the defendants placed the fill material constituted an "adjacent wetland" to "navigable waters of the United States" within the meaning of 33 CFR 323.2. The Magistrate concluded that the area was "wetland," 33 CFR 323.2(c), but that it was not "adjacent" to navigable waters of the United States. 33 CFR 323.-2(d). In light of this conclusion the Magistrate made the following recommendation:

> Because the filled area is not an adjacent wetland under 33 CFR 323.2(a)(3) and not an area whose degradation affects interstate commerce under 33 CFR 323.2(a)(5), the area is not subject to Army Corps of Engineers' regulations. Therefore, the Court respectfully recommends to the United States District Court that an order enter dismissing the Government's complaint based upon a finding of no cause of action.

For the reasons expressed below the Court must REJECT this recommendation.

The Court accepts the Magistrate's findings of fact with one important clarification. The evidence clearly shows that there is a DIRECT water connection between the Terry Drain and the Quanicassee River. (Exhibits 3a, 3b, 9, and 13). The Magis-

trate's finding no. 5 alludes to this fact without expressly making such a finding. Since it is relevant to a determination of adjacency, the Court will clarify that there is indeed a direct water connection.

There is abundant evidence in the record to support the Magistrate's conclusion that the filled area constitutes a "wetland" within the meaning of 33 CFR 323.2(c). The Court therefore adopts this conclusion.

■ The Court, however, finds insufficient evidence to support the conclusion that the fill site is not "adjacent" to navigable waters of the United States within the meaning of 33 CFR 323.2(d). This regulation defines "adjacent" as meaning "bordering, contiguous, or neighboring..." In accordance with this definition, a wetland may be found "adjacent" to a navigable waterway if it is *either* bordering, contiguous *or* neighboring. The presence of the conjunction "or" reveals that Congress intended these as alternative sub-definitions which, if satisfied, may constitute adjacency within the regulatory scheme.

■ The Magistrate appears not to have fully considered each alternative in reaching his conclusion. Rather, his analysis was limited to concluding that the wetland area was not "contiguous" to a navigable water, the Quanicassee River. *United States v. Riverside Bayview Homes Inc.*, No. 77–70041 (E.D.Mich., decided February 24, 1977). This Court finds ample evidence and legal basis to conclude that the wetland area is "neighboring" to the Quanicassee River and therefore a "water of the United States" within the jurisdiction of the Army Corps of Engineers.

The numerous exhibits showing an aerial perspective of the area in question reveal the close proximity of the fill area to the Quanicassee River and Lake Huron. Moreover, the testimony of Robert Tucker and Hal Harrington on this issue provides additional support. The Court finds logic and guidance in the responses of witness Robert Tucker of the Army Corps of Engineers to questions put to him by counsel for the defendants:

Q. What does neighboring mean to you?

A. In a reasonable proximity.

Q. Okay. Does the Corps of Engineers have any standards or guidelines by which they define neighboring?

A. Not in terms of distance.

Q. Distance?

A. No.

Q. Do they have any standards at all by which they define neighboring?

A. Not that I am aware of.

. . . . .

Q. Assuming that the Terry Drain waters are not waters of the United States, then this land is not adjacent or contiguous to the Quanicassee River, is it?

A. It is still considered to be adjacent to the Quanicassee River.

Q. You consider it within the scope of neighboring, do you not?

A. Yes, I do and adjacent, and with the presence of the breach in the dyke, contiguous.

Q. How do you define the word contiguous?

A. In this particular case there is a direct surface water connection.

(Transcript at 111–113).

Based on all the evidence, the Court agrees that the wetland area is "neighboring" and, given the direct water connection, "contiguous" to the Quanicassee River.

Merely because a parcel of land lies between the wetlands and the river does not alter this conclusion. The regulation itself, 33 CFR 323.2(d), states that wetlands may be separated from other waters of the United States by "man-made dikes or barriers, natural river berms, beach dunes and the like . . ." In addition, the Preamble to the regulations, 42 Federal Register 37129 (July 19, 1977) states that:

The term [adjacent] would include wetlands that directly connect to other waters of the United States, or that are in reasonable proximity to these waters but physically separated from them by man-made dikes or barriers, natural river berms, beach dunes, and similar obstructions.

Finally, even defendants' own dictionary definition of "neighboring," used in their reply to the government's objections, defines it as "being immediately adjoining or relatively near . . ." Applying this common sense definition is in keeping with the intention of Congress that waters subject to the regulatory control of the United States be given "the broadest possible constitutional interpretation." *United States v. Weisman,* 489 F.Supp. 1331, 1337–1338 (M.D. Fla., 1980).

Based on the foregoing, the Court concludes that the area where the defendants placed the fill material is an "adjacent wetland" to "navigable waters of the United States", 33 CFR 323.2, and therefore within the jurisdiction, and subject to the permit procedure, of the United States Army Corps of Engineers. 33 U.S.C. § 1344. The defendants therefore acted illegally in not first seeking a permit from the Corps prior to dumping the fill material in this area.

Having reached this conclusion the Court need not address the government's objections regarding whether the Terry Drain is a "water of the United States" or whether the degradation of the wetlands affects interstate commerce.

*Judgment*

Accordingly, IT IS HEREBY ORDERED AND ADJUDGED that the defendants are permanently enjoined from depositing fill or other pollutants into the Quanicassee River or its adjacent wetlands, or in any other waters of the United States, without first obtaining a valid permit from the United States Army Corps of Engineers under the provisions of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*

IT IS FURTHER ORDERED AND ADJUDGED that if so notified to do so by the Army Corps of Engineers, that the defendants, within ninety (90) days of such written notice, remove the unauthorized fill material and return the area in question to its former condition.

Finally, given defendant's previous knowledge that this area was arguably within the jurisdiction of the United States Army Corps of Engineers by virtue of the Stipulation and Order of Dismissal in the matter of *United States v. Lee Wood Contracting, Inc.*, No. 79–71106 (E.D.Mich., April 30, 1979), IT IS FURTHERED OR-DERED AND ADJUDGED that the defendants pay to the United States Government a civil penalty in the amount of One Thousand ($1,000.00) Dollars.

IT IS SO ORDERED.

## APPENDIX

## MEMORANDUM OPINION AND RECOMMENDATION

In this action the United States of America is seeking injunctive relief and the imposition of civil penalties against the Defendant Corporation and its officers for placing fill materials into a water of the United States without a permit. The Defendants contend that the filled area is not a water of the United States and thus not within the regulatory jurisdiction of the United States Army Corps of Engineers.

## FINDINGS OF FACT

1. On March 6, 1980, bricks and other debris were placed on the property of Jerome Wood and in the ditch running along the highway right-of-way at 9383 Bay City Forestville Road (M–25), Fairgrove, Michigan.

2. The material was transported to the site in trucks owned and operated by Lee Wood Contracting, Inc. under the supervision of Marvin Wood, Vice President of the corporation; the material, when placed, was leveled by means of a bulldozer owned by Lee Wood Contracting and operated by Marvin Wood. The amount of fill material consisted of approximately 500 cubic yards of fill, and was placed at the site under direction of Marvin Wood. Marvin Wood later informed other corporate officers of his actions. At the time the fill was placed, the Department of the Army, Corps of Engineers, had not issued any permit for such

fill, nor had received any application for a permit.

3. The property of Jerome Wood in the vicinity of the filled areas is characterized by standing water, numerous cattails, sedges and various other hydrophytic vegetation. The area also serves as spawning ground or habitation for carp, northern pike, muskrat and ducks.

4. Lake Huron is a navigable water of the United States. The Quanicassee River is a tributary to Lake Huron.

5. The Terry Drain is part of the general system of drains of Tuscola County; the Terry Drain originates some distance to the south and east of the filled area and flows westerly along the edge of property owned by Jerome Wood until the Terry Drain joins the highway right-of-way ditch beside M–25 directly west of Jerome Wood's property. At this junction, the waters flow westward, merging with additional waters of the Northwest Drain before reaching the Quanicassee River.

6. In approximately 1951, the Terry Drain was rebuilt, widened and deepened by the Tuscola County Drain Commission.

## CONCLUSIONS OF LAW

1. 33 CFR 323.2(c) defines the term "wetlands" as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs and similar area."

The Court must decide whether or not the filled area satisfied this definition of "wetlands." The Court concludes that the area is a wetland as described by federal regulations. The testimony of several witnesses clearly established that the filled area is populated with an abundance of cattails, sedges and other hydrophytic vegetation. These types of vegetation require saturated soil conditions. In contrast, no evidence shows that saturated soil condi-

tions are not the normal circumstances in this vicinity and that such vegetation is not located in the area under normal circumstances. Moreover, several witnesses indicated that the area is generally utilized as farmland for crops like beans or potatoes which also require moist soil conditions. Further, these farms can often be maintained only by using artificial means for removal of water. Drainage tiles and water pumps are widely necessitated to adapt the soil for farmland. Therefore, the filled area does constitute a wetlands under the Corps of Engineers' regulations.

2. 33 U.S.C. § 1344 provides that the Army Corps of Engineers shall have jurisdiction to control discharge of dredged or fill materials into the navigable waters by a permit procedure. 33 U.S.C. § 1362(7) defines "navigable waters" as waters of the United States and the territorial seas. The term "waters of the United States" is more encompassing than the term "navigable water of the United States." *Natural Resources Defense Council, Inc. v. Callaway*, 392 F.Supp. 685 (D.D.C.1975).

33 CFR 323.2(a) defines "waters of the United States" as:

"(1) The territorial seas with respect to the discharge of fill material...

(2) Coastal and inland waters, lakes, rivers, and streams that are navigable waters of the United States, including adjacent wetlands;

(3) Tributaries to navigable waters of the United States, including adjacent wetlands (manmade, nontidal drainage and irrigation ditches excavated on dry land are not considered waters of the United States under this definition).

(4) Interstate waters and their tributaries, including adjacent wetlands; and

(5) All other waters of the United States not identified in paragraph (1)–(4) above, such as isolated wetlands and lakes, intermittent streams, prairie potholes and other waters that are not part of a tributary system to interstate waters or to navigable waters of the United States, the degradation or destruction of which could affect interstate commerce." (Footnote omitted).

3. 33 CFR 323.2(d) defines "adjacent" as meaning "bordering, contiguous, or neighboring. Wetlands separated from other waters of the United States by man-made dikes or barriers, natural river berms, beach dunes and the like are adjacent wetlands."

According to the Government's theory in this case, the filled area is a wetland adjacent to the Quanicassee River. Since the Quanicassee River is a tributary to Lake Huron—a navigable water of the United States—the filled property lies within the regulatory jurisdiction of the Army Corps of Engineers.

The regulations in defining "adjacent wetlands" describe the wetlands as neighboring, contiguous or bordering waters of the United States. The regulations do not specify any particular distance wherein the wetlands must be found. Rather, whether or not a wetland is adjacent or bordering or neighboring or contiguous depends upon its relationship to a body of water within the Corps of Engineers' domain.

When confronting this identical question, then United States District Judge Cornelia Kennedy, determined that whether an area is contiguous the Court must be decided by whether the wetland-type vegetation continues to the navigable waters. *United States v. Riverside Bayview Homes, Inc.*, (No 77–70041 E.D.Mich., decided February 24, 1977). According to Judge Kennedy's common sense logic, any other interpretation would permit a landowner of contiguous and adjacent wetlands to deed a ten-foot strip between the navigable waters and his property to some third person, and then claim that the wetlands were no longer contiguous or adjacent.

Under the *Riverside Bayview Homes* theory, the wetland vegetation in this case must continue to the Quanicassee River. Clearly, the fill site here does not qualify as adjacent wetlands. Several large parcels and farms are located between the wetlands and the Quanicassee River. The wetland-type vegetation does not continue to the Quanicassee River. Moreover, 33 CFR 323.-

2(a)(3) excepts man-made nontidal drainage and irrigation ditches excavated on dry land from the definition of waters of the United States. The Terry Drain, then, is not a water of the United States and it too lies between the filled area and the Quanicassee River.

4. The Government further contends that even if the filled area is not considered adjacent to the Quanicassee River pursuant to 33 CFR 323.2(a)(3), the area still falls within the Corps of Engineers regulations under 33 CFR 323.3(a)(5) because its degradation would affect interstate commerce.

Several witnesses testified that the filled area acts as a spawning and breeding grounds for fish and water fowl. Another witness reported the relationship of the filled area to a nearby state recreational area. However, the Court believes that such testimony does not establish an affect on interstate commerce. The power of Congress to regulate even local activities within the reach of the commerce clause definitely extends to local activities substantially implicating interstate activities. *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1976); *Heart of Atlanta Motel v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964). Here, the evidence does not sufficiently prove any substantial nexus to interstate commerce. No evidence shows that the number of fish or water foul in Lake Huron or its tributaries like the Quanicassee River would diminish. No evidence was proffered that degradation of the filled area might spoil the state game and recreational areas nearby. Therefore, the Court concludes that the filled area is not subject to Corps of Engineers' regulatory powers under 33 CFR 323.2(a)(5).

Because the filled area is not an adjacent wetland under 33 CFR 323.2(a)(3) and not an area whose degradation affects interstate commerce under 33 CFR 323.2(a)(5), the area is not subject to Army Corps of Engineers' regulations. Therefore, the Court respectfully recommends to the United States District Court that an order enter dismissing the Government's Complaint based upon a finding of no cause of action.

United States District Judge James Harvey has referred this matter to United States Magistrate Harvey D. Walker pursuant to 28 U.S.C. § 636(b)(1)(B). The parties to this action may object to and seek review of this recommendation under 28 U.S.C. § 636(b)(1)(B); failure to object waives further appeal. *United States v. Walters*, 638 F.2d 947 (1981).