**UNITED STATES of America**

v.

**Quinton R. BRADSHAW.**

**Civ. No. JH–79–2118.**

United States District Court,
D. Maryland.

April 2, 1982.

Russell T. Baker, Jr., U. S. Atty., D. Md. and Edward M. Norton, Jr., Asst. U. S. Atty., Baltimore, Md., David E. Dearing, Atty. U. S. Dept. of Justice, Washington, D. C., for plaintiff.

J. Edward Martin, Jr. and Allen, Thieblot & Alexander, Baltimore, Md., for defendant.

## MEMORANDUM

HOWARD, District Judge.

On September 15, 1981, this Court entered a Memorandum and Order finding that the defendant, Quinton R. Bradshaw, had placed fill material on wetlands without a permit in violation of Sections 301(a) and 404 of the Federal Water Pollution Control Act, as amended. 541 F.Supp. 880. The Court also directed the United States to submit a restoration plan for removal of the fill material. Pending before the Court are the government's two proposed restoration plans, "Alternative A" and "Alternative B," to both of which defendant has filed objection. In this Memorandum, the Court will consider the appropriateness of the government's plans, and,

for the reasons discussed below, will order that the defendant implement Alternative B.

*Appropriateness of Government's Plans*

■ A restoration plan must: (1) confer maximum environmental benefits, (2) be achievable as a practical matter, and (3) bear an equitable relationship to the degree and kind of wrong which it is intended to remedy. *United States v. Weisman*, 489 F.Supp. 1331, 1343 (M.D.Fla.1980).

Both restoration plans submitted by the government require the defendant to lower the elevation in the "Restored Marsh" area to an elevation suitable for the establishment of a salt marsh cordgrass. *See* diagrams accompanying United States' Proposed Restoration Plan. Alternative A requires the defendant to remove all of the fill material placed on the marsh, and to restore the site to its original condition before the fill was placed there. Alternative B requires the defendant to remove only part of the fill placed on the site, but also requires the defendant to lower an existing upland area on which fill was not placed to marshland elevation.

Defendant objects to the government's plans on the grounds that both fail to meet all of the three *Weisman, supra,* criteria for a proper plan of restoration. A discussion of the criteria follows.

*Maximum Environmental Benefit*

Defendant contends that "[n]o environmental benefit will be achieved by requiring [him] to dig out his family property," particularly since rain, wind, and tidal flow are already converting his land and that of other riparian owners into saltwater marsh. In support of his argument, defendant has submitted the affidavit of a neighboring landowner, Robert Pruitt, and a newspaper article, both of which attest to tidal inundation of Pruitt's property.

■ There is no merit in defendant's argument. Mr. Pruitt's lay opinions are of little value when balanced against the expert testimony of Alexander Dolgos, the government ecologist who prepared the res-

toration plans. The newspaper article is hearsay at best, and irrelevant at worst. The site of the violation which is the subject of this action is not located on Mr. Pruitt's property. Further, it is not appropriate to extrapolate from the effect of the inundation of Mr. Pruitt's property, caused as it is by faulty tide gates and dikes, to predict the effect of natural forces on defendant's property, which, as marshland, would be expected to be inundated periodically.

■ Finding no merit in defendant's contentions, the Court must rely on the uncontradicted testimony of the government's expert witness, Alexander Dolgos. *See International Shoe Co. v. Federal Trade Commission*, 280 U.S. 291, 299, 50 S.Ct. 89, 91, 74 L.Ed. 431 (1930) and *Webster v. Offshore Food Service, Inc.*, 434 F.2d 1191, 1193 (5th Cir. 1970). The Court is persuaded that the implementation of either Plan A or Plan B will replace the crucial ecological benefits which were eliminated by defendant's unlawful action, and that natural forces alone will not restore the unlawfully filled area to the wetland system.

*Practicality*

■ Defendant raises a straw man to challenge the government's cost estimate for the proposed restoration plan. Defendant claims that the contractor spoken to by the government, Robert W. Todd, refused to consider performing the restoration, and that the cost estimate submitted by the government is inaccurate. Mr. Todd's affidavit, fully supporting the government's position, lays this matter to rest.

*Equity*

■ Defendant argues, initially, that restoration is inappropriate because he violated the law unintentionally, and immediately ceased his activities upon notice of a possible violation. The Clean Water Act, however, is a strict liability statute, and as criminal penalties were not sought in this case, defendant's intent is irrelevant. *See*

*United States v. Earth Sciences*, 599 F.2d 368, 374 (10th Cir. 1979).

Concerning the equitable relationship issue, the Court finds guidance in *United States v. Board of Trustees of Florida Keys Community College*, 531 F.Supp. 267 (S.D. Fla.1981), which involves an unintentional and minimal violation, and a cessation of activity after notice. In light of *Board of Trustees*, restoration of defendant's land is appropriate.

*Proposed Restoration Plans*

Defendant opposes both restoration plans and has voiced no preference for either one. As the cost is the same for both, the Court will order that defendant implement Alternative B, which appears to provide defendant with a more utilizable tract of land than Alternative A.

ORDER

It is this 2nd day of April, 1982, by the United States District Court for the District of Maryland,

ORDERED:

1. That after giving notice in writing to the District Engineer, United States Army Corps of Engineers, Baltimore, Maryland, that such work is to be commenced, the defendant shall implement and carry out on or before May 17, 1982, the following restoration measures at defendant's property located on Ape Hole Creek, Somerset County, Maryland, under the supervision and subject to the approval of the District Engineer. The defendant shall remove all fill material from the area designated "Restored Marsh," on the plan of restoration (Alternative B) attached to and incorporated in this Order. The defendant shall remove fill material from the designated area and shall establish an elevation and contour appropriate for the establishment of a salt marsh cordgrass (*Spartina* alterniflora) marsh, that elevation to be set on site by a representative of the Corps of Engineers. All fill material removed from the site shall be placed on an upland area and shall not be placed in navigable waters or on adjacent wetlands.

2. That the provision of this Order shall apply to and be binding upon the defendant, his agents and successors.

3. That the Clerk of the Court shall mail copies of the Memorandum and this Order to all parties.