**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John V. TILTON, Brenda Tilton and**
**I.T.T. Rayonier, Inc.,**
**Defendants-Appellants.**

**No. 82–5196.**

United States Court of Appeals,
Eleventh Circuit.

May 19, 1983.

---

C. Ray Greene, Jr., Jacksonville, Fla., for Tilton and Tilton.

Robert S. Yerkes, Asst. U.S. Atty., Jacksonville, Fla., Laura Frossard, Edward Shawaker, Robert L. Klarquist, Ellen J. Durkee, Appellate Section, Land & Natural Resources Div., Washington, D.C., for plaintiff-appellee.

Before FAY and VANCE, Circuit Judges, and ALLGOOD *, District Judge.

VANCE, Circuit Judge:

In 1975 defendants John and Brenda Tilton became the owners of 151 acres of land in Putnam County, Florida adjacent to the St. Johns River, a navigable stream. The land contains a pecan grove, pasture lands on which Mr. Tilton raises cattle and a wetlands area or freshwater swamp. The wetlands are separated from the river by an earthen berm thirty or more feet in width with an old roadway on it. There is no direct or indirect surface connection between the wetlands and the river. The evidence does not reveal whether the berm is natural or man-made, but it has existed for more than forty years.

Before the Tiltons acquired the land the prior owners had arranged with I.T.T. Rayonier, Inc. to fill in part of the swampy area with material from its nearby sawmill. After the Tiltons acquired the land Mr. Tilton arranged with I.T.T. Rayonier, Inc. to continue filling a part of the swamp to increase the area of his pasture. The fill material was a mulch consisting of woodchips, pine bark and soil. The area filled after the Tiltons acquired ownership of the land was within about four hundred feet of the river at the nearest point. After Mr. Tilton had filled in an acre or two, his activity came to the attention of the U.S. Army Corps of Engineers which issued a cease and desist order to the Tiltons on January 15, 1979.

The parties negotiated for two years without success. On January 14, 1981 the United States filed the present action in district court against the Tiltons and I.T.T. Rayonier, Inc. under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1376, commonly referred to as the Clean Water Act (the Act). It sought civil penalties, restoration of the Tilton wetlands to their natural condition and an injunction against further filling of the swamp without a permit in violation of 33 U.S.C. § 1344. The government reached a settlement with I.T.T. Rayonier and that defendant is not a party to this appeal. The Tiltons denied the allegations in the complaint contending in essence that their wetlands were not subject to control by the Corps of Engineers or the jurisdiction of the court. A bench trial was held on July 9, 1981 and September 18, 1981 after which the district court entered judgment for plaintiff enjoining further filling of the Tiltons' swamp but denying further relief.

On appeal to this court the Tiltons repeat their broad jurisdictional attack. Without addressing with a great deal of specificity the provisions of the Act, the regulations promulgated thereunder or the authority of Congress under the Constitution they say simply that their wetlands and pasture have nothing to do with the navigable waters of the United States. They reason that Congress could not possibly have intended to

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

regulate surface water that does not flow into a navigable stream, and that the district court's injunction based on a contrary conclusion should be reversed.

The Tiltons apparently do not contest that a permit must be obtained before one may place fill material such as they were using in the "waters of the United States." They simply deny that this has anything to do with their pasture or fresh water swamp. Their problem, however, comes from the definitions contained in the regulations promulgated under the Act.

We recently recognized that Congress intended "waters of the United States" to include the maximum permissible under the Constitution. *United States v. Lambert,* 695 F.2d 536, 537, 538 (11th Cir.1983). The regulatory definitions promulgated to carry out that intent are to the extent applicable as follows:

(a) The term "waters of the United States" means:

.    .    .    .    .

(2) Coastal and inland waters, lakes, rivers, and streams that are navigable waters of the United States, *including adjacent wetlands,*

(3) Tributaries to navigable waters of the United States, *including adjacent wetlands....*

.    .    .    .    .

(c) The term "wetlands" means those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps[,] marshes, bogs and similar areas.

(d) The term "adjacent" means bordering, contiguous, or neighboring. *Wetlands separated from other waters of the United States by man-made dikes or barriers, natural river berms, beach dunes and the like are "adjacent wetlands."*

33 C.F.R. § 323.2 (emphasis added).

It may be that the extravagant reach of the regulations would raise serious problems if literally applied under some hypothetical situations. Such problems, however, are not before the court under the present facts.

The evidence clearly established and the district court found that the Tiltons' swamp came within the definition of wetlands. It was separated from the St. Johns River only by the berm that is as narrow as 30 feet in places. Undisputed testimony of the government's expert demonstrate its hydrological and ecological links with the river.[1]

The findings of the district court are not clearly erroneous and its opinion is free of legal error.

AFFIRMED.

1. Examples of the testimony of Dr. Algis G. Taruski, the Corps of Engineers' supervisory biologist are as follows:

Wetland areas such as this provide habitat area for birds, fish, invertebrates, things like shrimp. One of the major functions of wetlands is to produce food material for what is called the detrital food chain. This is in effect decaying vegetation which is utilized by a great many organisms, including fish such as mullet, invertebrates such as shrimp which have important market value, and a great many others.

The detritus produced by a wetland area such as this forms the base of some very important food chains, important both ecologically and economically. Wetland areas such as this also serve to filter upland runoff before this upland runoff enters into the water bayou.

It serves to buffer uplands from storm water damage. It serves to store storm water runoff and delay the runoff and thereby helps to prevent flooding, both of downstream areas and of upland areas adjacent to the wetland in particular.

It serves as both nursery areas for juvenile fish and invertebrates. It serves as a nesting and feeding areas [sic] for a great many birds, including migratory waterfowl.

.    .    .    .    .

Q Is there presently any hydrological connection between the fill area and the river?
A These areas are likely connected through the ground water.
Q Not above?
A Only on extreme high tides, such as in hurricane situations is water likely to overtop that berm or roadway.