**UNITED STATES of America, Plaintiff**

v.

**CITY OF FORT PIERRE, SOUTH DAKOTA; J. Tipps Hamilton, in His Official Capacity as Mayor, City of Fort Pierre, South Dakota; and the State of South Dakota, Defendants.**

Civ. No. 81–3040.

United States District Court,
D. South Dakota, C.D.

Dec. 30, 1983.

Dean K. Dunsmore, U.S. Dept. of Justice, Environmental Defense Section, Land & Natural Resources Div., Washington, D.C., David L. Zuercher, Asst. U.S. Atty., Pierre, S.D., for plaintiff.

Charles M. Poches, Jr., Poches & Lee Law Offices, Fort Pierre, S.D., Horace R. Jackson, Rapid City, S.D.; Lynn, Jackson, Shultz & Lebrun, John Guhin, Asst. Atty. Gen., Natural Resources Section, Pierre, S.D., for defendants.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

In this suit plaintiff contends that defendant City violated the Clean Water Act by discharging fill material into wetland waters of the United States, without a permit. 33 U.S.C. §§ 1311, 1319, 1344. Plaintiff United States seeks declaratory and injunctive relief, civil penalties of $10,000 per day of violation, and restoration of the area.

The City argues that the area filled was not a wetlands and thus, no permit was required. Defendant City also raises affirmative defenses of estoppel, selective prosecution, violation by plaintiff of the Administrative Procedure Act, 5 U.S.C. §§ 554, 556, 557, in the permit process, and that the filling done by the City was justified as an effort to alleviate a health hazard caused by pollution of the area.

### I.

Locally known as the Fort Pierre slough, the land involved in this action lies within the boundaries of the City and between U.S. Highway 83 and the Missouri River. On March 18, 1980, the City acting through its then mayor, J. Tipps Hamilton, applied to the United States Army Corps of Engineers (Corps) for a permit under Section 404 of the Clean Water Act, 33 U.S.C. § 1344, to construct the Ninth Avenue roadway across the slough. Pursuant to its regulations, the Corps issued public notice of the application and invited public comment. The United States Fish and Wildlife Service (FWS) and the Environmental Protection Agency (EPA) both responded and recommended denial of the permit. Although City officials and a representative of FWS met to try to reach an agreement for alternative placement of a roadway, no agreement was reached. The City failed to respond to either the FWS or EPA objections to issuance of the permit.

On August 4, 1980, the City began construction of the Ninth Avenue roadway without a permit. The City used 6481 cubic yards of permanent fill material to construct the 700 feet by 5 feet deep and 50 feet wide Ninth Avenue road. Shortly thereafter, the Corps notified the City by certified mail that because the filling activity violated the Act, it must cease and de-

sist. The City failed to accept the notice until at least six months later.

On August 14, 1980, the City began construction of a second roadway, Missouri Street, across the slough. The City placed 18,500 cubic yards of shale loam in the slough to construct a 2,000 feet by 5 feet deep and 50 feet wide roadway. The City did not apply for or receive a permit for this construction. Approximately 3.9 acres of the Fort Pierre slough were filled in constructing Ninth Avenue and Missouri Street.[1] On February 9, 1981, the Corps again ordered the City to cease and desist all filling activity in the slough. On July 21, 1981, the United States commenced this action. The case was subsequently tried to the Court.

## II.

■ The first question presented is whether the so-called Fort Pierre slough area comes under the coverage of the Act as a "wetland" [a water of the United States], as plaintiff contends. Regulations promulgated under authority of the Act (33 U.S.C. § 1344) define waters of the United States as:

(2) Coastal and inland waters, lakes, rivers, and streams that are navigable waters of the United States, including adjacent wetlands;

(3) Tributaries to navigable waters of the United States, including adjacent wetlands.

.     .     .     .     .

(4) Interstate waters and their tributaries, including adjacent wetlands; ...

33 C.F.R. § 323.2 (1982).[2]

Other regulations under the Act specifically define wetlands as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps[,] marshes, bogs and similar areas." 33 C.F.R. § 323.2(c) (1982).

Congress established that "waters of the United States" should be given a broad interpretation. *United States v. Earth Sciences, Inc.,* 599 F.2d 368, 375 (10th Cir. 1979); *Leslie Salt Co. v. Froehlke,* 578 F.2d 742, 755 (9th Cir.1978). *Natural Resources Defense Council, Inc. v. Callaway,* 392 F.Supp. 685, 686 (D.D.C.1975). Furthermore, "Congress intended to protect the waters in a plenary, geographic sense, and ... wetlands are specifically included within that protection." *United States v. Weisman,* 489 F.Supp. 1331, 1338 (M.D.Fla.1980). The term wetlands is not a term of pure science; it is a term that Congress defined and expected to be interpreted to satisfy a practical, social and political need. *Avoyelles Sportsmen's League, Inc. v. Alexander,* 511 F.Supp. 278, 288 (W.D.La.1981). If the elements of the regulatory definition of wetlands are

---

**1.** In 1968 the Fort Pierre slough consisted of approximately 44.07 acres. That year the Corps filled approximately 13.8 acres at the southerly end, adjacent to the mouth of the slough, where it joins the main channel of the Missouri River. Subsequent to 1968, the City and/or private citizens filled an additional 2.2 acres. As of January 1, 1980, the remaining part of the slough was roughly rectangular in shape, being approximately 300 to 520 feet in width and about 2,500 feet in length, comprising approximately 28.7 acres.

**2.** The latest revision of the regulations changes the definition of waters of the United States to:

(1) All waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce ...;

(2) All interstate waters including interstate wetlands;

(3) All other waters such as ... wetlands ... the use, degradation or destruction of which could affect interstate or foreign commerce ...;

(4) All impoundments of waters otherwise defined as waters of the United States under this definition;

(5) Tributaries of waters identified in paragraphs (a)(1)–(4) of this section;

.     .     .     .     .

(7) Wetlands adjacent to waters ... identified in paragraphs (a)(1)–(6) of this section....

33 C.F.R. § 323.2(a) (1983). No party cited or relied on the above revisions, but in any event, the conclusion reached by the Court in this case would be the same.

met, the slough should be classified as a wetlands. *See* 33 C.F.R. § 323.2(c) and (d) (1982); *United States v. Holland,* 373 F.Supp. 665 (M.D.Fla.1974). Three factors are to be considered in determining whether the area in suit is a wetland, namely, the saturation or inundation of the area by surface or ground water, the type of prevalent vegetation, and the soil conditions. *See* 33 C.F.R. § 323.2(c) (1982); *Avoyelles Sportsmen's League, Inc. v. Alexander, supra,* 511 F.Supp. at 289.

Evidence presented by both sides at trial established that the slough area was frequently inundated and saturated after the Corps filled in the lower area in 1968. At approximately the same time, the vegetation in the slough was 90–98% cattails, a plant typically suited for wetland areas. Other vegetation consisted of wetland species such as burr reed, sedge, smart weed and bull rush. Soil conditions are thus typical of soil found in wetlands.

### III.

██ A further question presented is whether the slough [wetland] area is adjacent to, in this case, the Missouri River, a water of the United States. The City contends the slough cannot be a wetland, since the present slough was formed in 1968 when the Corps deposited fill material into the lower end of the slough, blocking the surface flow of water between the former Missouri River side channel, and the Missouri River. A wetland is adjacent "if it is either bordering, contiguous or neighboring". *See* 33 C.F.R. § 323.2(d) (1982); *United States v. Lee Wood Contracting, Inc.,* 529 F.Supp. 119, 120 (E.D.Mich.1981). The parties stipulated that the slough was originally a side channel of the Missouri River, but is now separated from the river by man-made and natural barriers, and lies

between 820 feet and 1,400 feet from the Missouri. Even though land lies between the slough and the Missouri, the slough may nonetheless be neighboring. *United States v. Lee Wood Contracting, Inc., supra,* 529 F.Supp. at 121. Moreover, the regulations under the Act expressly provide that an "adjacent wetland[s]" may be separated from [the Missouri] by "man-made dikes or barriers, natural river berms, beach dunes and the like...." 33 C.F.R. § 323.2(d) (1982).

### IV.

The City argues the slough is not an adjacent wetland, because there is no hydrological connection between the Missouri River and the slough. In *United States v. Tilton,* 705 F.2d 429 (11th Cir.1983) the Court held that a swamp was a wetlands even though the swamp and nearby river had no surface connection. Significantly, the Act and regulations do not require a hydrological connection between the waters of the United States [here the Missouri River] and the adjacent wetland. It is sufficient that the wetlands are "... areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions". 33 C.F.R. § 323.2(c) (1982). It is undisputed that the area in suit does support a "prevalence of [such] vegetation."

The Court has not been cited to nor in its own research has it found a case definition of "surface" water as the term is used in regulations under the Act (33 C.F.R. 323.-2(c) (1982))[3]. For this case the Court accepts the following definition of "surface waters":

Surface Waters. As distinguished from the waters of natural stream, lake or

---

**3.** One of the regulations adopted for use under the Resource Conservation and Recovery Act, 42 U.S.C. § 6944(a), is entitled "Surface water." 40 C.F.R. § 257.3–3 (1983) (last amended in 1981). The regulations, however, fails to define "surface water;" it merely refers to the Clean Water Act, 33 U.S.C. § 1251 *et seq.,* and 33 C.F.R. pt. 323 for definitions of several terms including "waters of the United States" and "wetlands."

Those two definitions are set out in pages 4 and 5 of this memorandum opinion. Because 40 C.F.R. § 257.3–3 (1983) does not define surface waters and refers to 33 C.F.R. pt. 323 (1983), which also does not define "surface water," this Court concludes the regulations adopted under the Clean Water Act do not define "surface water."

pond, surface waters are such as diffuse themselves over the surface of the ground, following no defined course or channel, and not gathering into or forming any more definite body of water than a mere bog or marsh. They generally originate in rains and melting snows, but the flood waters of a river may also be considered as surface waters if they become separated from the main current, or leave it never to return, and spread out over lower ground.

Black's Law Dictionary 1427 (rev. 5th ed. 1979).

There is no surface water connection between the Missouri River and the slough area in suit. The evidence is equivocal concerning whether ground water from the Missouri enters the slough area.[4] However, under the "surface water" definition adopted by the court, *supra,* the slough area is "... inundated or saturated by surface ... water at a frequency and duration sufficient to support, and ... under normal circumstances ... [does] support, a prevalence of vegetation typically adapted for life in saturated soil conditions." See 33 C.F.R. 323.2(c) (1982). The Court concludes the slough area, under the Act, is an "adjacent wetlands".

### V.

■ Necessary to plaintiff's case is a determination that the Act required that the City have a permit to place fill in the slough [wetlands] area. The City admits placement of the fill for Ninth Avenue and Missouri Street, and does not contest plaintiffs' claim that the fill material was a pollutant. *See United States v. Weisman, supra,* 489 F.Supp. at 1337. The City admits it had no permit issued by the Corps under the Act but claims it had a nationwide permit, 33 C.F.R. § 323.4–2(a)(1)[5] and 323.4–2(a)(4) (1982)[6]. Neither regulation cited is pertinent since (1) it is clear under the Act and regulations that an individual permit is required before a pollutant such as fill may be placed in an adjacent wetland, and (2) the City has failed to show that in this case it qualifies for a "nationwide permit" under either of the regulations it cites.

### VI.

■ The City defends, claiming that plaintiff is estopped to bring this suit because the Corps, in 1968, blocked the surface connection between the river and the slough area, later added fill, and also tolerated filling activity without a permit, by private persons. The short answer is that there is no basis for estoppel where the City, as here, proceeded without the permit required by the Act. *Weiszmann v. District Eng'r, United States Army Corps of*

**4.** During a 48-hour period on April 18–20, 1982, plaintiff caused certain tests to be undertaken to ascertain the hydrologic relationship between the Fort Pierre slough and the Missouri River. The conclusion reached in the written report on the April 18–20 test was as follows:

The groundwater levels in the vicinity of the slough are related to and dependent upon the stages in the Missouri River, with the degree of dependence varying with distance from the river and the duration of river stage. The water level within the slough, however, was apparently not appreciably affected by the river stage during the test period. It appears that the bed of slough is lined with the same type of material, silty clay and organic silt, detected in the hole drilled to install piezometer No. 11. This material is very impervious to the passage of water and, for this reason, the lag time for a reflected change in the slough area would be expected to be quite

long. A sustained period of high releases, probably several days, would be needed to determine if the water level in the slough is related to river stages. Under normal Oahe releases and Big Bend pool elevation at or near elevation 1420 msl, the water level in the slough is unaffected.

The test involved use of water released from Oahe Dam to vary the river stages nearly five feet during the test period.

**5.** A revision to the regulations establishes a new section dealing with nationwide permits, 33 C.F.R. § 330 (1983). The new section number for 33 C.F.R. § 323.4–2(a)(1) (1982) is 33 C.F.R. § 330.4(a)(2) (1983).

**6.** The new section number for 33 C.F.R. § 323.-4–2(a)(4) (1982) is 33 C.F.R. § 330.4(2) (1983). The revisions in footnotes 5 and 6 do not change the conclusion in the text of the opinion.

*Eng'rs,* 526 F.2d 1302 (5th Cir.1976); *United States v. Weisman, supra,* 489 F.Supp. at 1342. *See United States v. Board of Trustees of Fla. Keys Community College,* 531 F.Supp. 267 (S.D.Fla.1981) (government's delay in issuing cease and desist order to stop filling of slough did not estop it from enforcing the Clean Water Act). Since granting a permit is an exercise of the government's sovereign power to protect the public's interest in environmental safety and quality, *Deltona Corp. v. Alexander,* 682 F.2d 888, 891–92 (11th Cir.1982), estoppel is not a defense.

■ The City also contends this is a selective prosecution by the United States because other fill activity without permit has been allowed. Assuming without deciding that this is so, the City's contention must be overruled. The Clean Water Act is a strict liability statute. *United States v. Bradshaw,* 541 F.Supp. 884, 886 (D.Md. 1982). The Corps has broad prosecutorial discretion to enforce a violation. *Bayou Des Familles Dev. Corp. v. United States Corps of Eng'rs,* 541 F.Supp. 1025, 1040 (E.D.La.1982). Absent proof here of invidious and arbitrary discrimination, a charge of selective prosecution cannot be found. *Id.* Although other fill activity was done without permits, the City had no reason to believe it had the right to construct the roads without permits. *See Lake Berryessa Tenants' Council v. United States,* 588 F.2d 267, 270 (9th Cir.1978).

■ A further defense advanced by the City is that due to the hazardous, polluted nature of the slough it was in the interest of the public health and welfare to construct the roadways. Because the City's actions violated the strict liability Clean Water Act, the motive of the City is, in law, immaterial.

■ The City's fourth defense is that the United States failed to comply with the Administrative Procedure Act (APA) 5 U.S.C. §§ 554, 556 and 557, because the City was not given a formal trial-type hearing. The notice and hearing requirement of 33 U.S.C. § 1344 applies only to objec-

tors to a permit application, not to the applicant. *Buttrey v. United States,* 690 F.2d 1170, 1176 (5th Cir.1982); *United States v. Alleyne,* 454 F.Supp. 1164, 1172 (S.D.N.Y.1978). Corps procedures are not governed by APA standards for formal adjudicatory hearings, and current Corps proceedings satisfy due process. *See Buttrey v. United States, supra,* 690 F.2d at 1170; *Taylor v. District Eng'r, U.S. Army Corps of Eng'rs, Jacksonville, Fla.,* 567 F.2d 1332 (5th Cir.1978); *Nofelco Realty Corp. v. United States,* 521 F.Supp. 458 (S.D.N.Y. 1981). By failing to wait for the permitting process to be completed for the Ninth Avenue fill and failing to apply for a permit for the Missouri Street fill, the City itself brought the permit processing to a stop.

The City also argues it did not receive detailed notice of the FWS reasons for recommending denial of the permit. The letter sent May 7, 1980, to the City from the FWS stated that the FWS recommended denial of the permit because the fill activity was not water-dependent, alternative routes were available and the area supports various species of wildlife. Further, the FWS replied on June 20, 1980, to a letter it received from the City asking for further explanation of the FWS's recommended denial of the permit. The City was given an opportunity to respond to the objections of the FWS, but failed to do so. *See United States v. Alleyne, supra,* 454 F.Supp. at 1164.

VII.

Upon all the evidence, the Court finds and concludes that defendant City violated the Clean Water Act by discharging pollutant fill into an adjacent wetlands by construction of Ninth Avenue and Missouri Street without a permit.

Defendant City will be restrained and enjoined from continuing to violate the Act. The Court reserves ruling on the plaintiffs' restoration plan until a hearing on restoration is held, at a time to be fixed by the Court. The City is granted forty days from this date to file a proposed restora-

tion plan. Ruling on plaintiffs' request for imposition of civil penalties upon defendants is reserved until conclusion of the hearing before this Court on a restoration plan.

This Memorandum constitutes the Court's findings of fact and conclusions of law upon which judgment shall now be entered.