United States Court of Appeals,

Eleventh Circuit.

No. 95-5167.

UNITED STATES of America, Plaintiff-Counter-Defendant-Appellee,

v.

Park B. BANKS, Defendant-Counter-Claimant-Appellant.

June 24, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 91-10107-CIV-JLK), James Lawrence King, Judge.

Before TJOFLAT and EDMONDSON, Circuit Judges, and O'NEILL[*], Senior District Judge.

EDMONDSON, Circuit Judge:

Defendant-Appellant Parks B. Banks appeals the district court's holding that he violated the Clean Water Act ("CWA") by discharging dredged material and fill onto wetlands. Because we find that the district court's application of the CWA to Banks' lands involved no clear error, we affirm.

*Facts and Background*

Section 404(a) of the CWA, 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Corps of Engineers ("Corps"), to issue permits for discharges of "dredged or fill material" into waters of the United States. The Corps may authorize these discharges through both individual permits and general, regulatory permits.

In 1980, Banks purchased three lots—lots QQ, IQ and IR—in Big Pine Key in Florida.[1] Banks began bulldozing lots IQ and IR and covering the lots with fill. Filling continued through approximately 1983, when Banks planted coconut trees on the filled lots and built a house on lot IQ. In March 1983, a Corps biologist informed Banks that parts of lots IQ and IR were wetlands and that

---

[*]Honorable Thomas N. O'Neill, Jr., Senior U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

[1]From 1980 through 1988, Banks purchased five lots on Big Pine Key. Four of the lots—lots IO, IP, IQ and IR—are contiguous, while the fifth—lot QQ—is approximately one-fourth of a mile southeast of the other four lots. Pine Channel is to the west of the lots, and Bogie Channel is on the east.

discharges onto those areas were unlawful without a permit. In April 1983, the Corps issued a cease and desist order, threatening enforcement action if Banks continued his discharges. The order suggested that Banks apply for an individual permit to authorize retroactively his activities. Banks applied for this "after-the-fact" permit, but the Corps denied it in April 1984. The Corps also told Banks that, to avoid an enforcement action, he must negotiate a restoration plan with them. Banks continued to discharge fill without a permit and entered into no negotiations for a restoration plan.

In 1988, Banks purchased lots IO and IP, located just south of lots IQ and IR. From 1988 to 1991, Banks cleared vegetation from these new lots and prepared them for coconut farming. During this time, Banks also added fill to Lot QQ.

In 1990, the Corps issued four cease and desist orders to Banks, accusing him of discharging fill into U.S. waters without a permit despite clear notice that his conduct was illegal. In December 1991, the government filed this suit against Banks, requesting that the district court enjoin future discharge of additional dredged or fill materials into the wetlands on the property, require Banks to restore the wetlands to their undisturbed condition before such unlawful discharge by removing the fill and otherwise implementing a restoration plan, and require Banks to pay an appropriate civil penalty.[2] Banks appealed.

*Discussion*

I. *Statute of Limitations*

Because the CWA does not specify a limitations period for enforcement actions under § 309, 33 U.S.C. § 1319, the default limitations provisions of 28 U.S.C. § 2462[3] apply to the government's actions for civil fines or penalties. The parties dispute, however, the applicability of this statute of

---

[2]In the light of the application of the statute of limitations to the government's claims for civil penalties, discussed below, the United States sought civil penalties in this case only for Banks' filling activities in 1989 and 1990.

[3]Section 2462 provides in pertinent part:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued.

limitations to claims for equitable relief.[4]

Traditionally, "statutes of limitation are not controlling measures of equitable relief." *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). The plain language of section 2462 does not apply to equitable remedies. *See North Carolina Wildlife Federation v. Woodbury,* Case No. 87-584-CIV-5 (E.D.N.C.1989) ("The express terms of 28 U.S.C. section 2462 apply only to suits for the enforcement of a "civil fine, penalty or forfeiture.'"); *United States v. Hobbs,* 736 F.Supp. 1406, 1410 (E.D.Va.1990) ("[Section 2462], by its own terms, has no bearing on suits in equity.")

Banks, however, urges us to adopt the "concurrent remedy rule," which provides that "equity will withhold its relief ... where the applicable statute of limitations would bar the concurrent legal remedy." *Cope v. Anderson,* 331 U.S. 461, 464, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602 (1947).[5] Banks relies chiefly on *United States v. Windward Properties, Inc.,* 821 F.Supp. 690 (N.D.Ga.1993) to support his position. In *Windward,* the government sought equitable relief and civil penalties under

---

[4]The government argues that Banks waived his statute of limitations defense for equitable relief by failing to raise it in a responsive pleading as required by Fed.R.Civ.P. 8(c). It is true that Banks raised the statute of limitations issue on the equitable claims by motion the day the trial began, which would normally waive the defense. *American National Bank of Jacksonville v. FDIC,* 710 F.2d 1528, 1537 (11th Cir.1983).

The government, however, neither objected nor responded to Banks' motion. Banks contends that the government, therefore, consented to litigate this issue under Fed.R.Civ.P. 15(b), which provides that "unpled issues which are tried with either express or implied consent of the parties are to be treated as if they were raised in the pleading." *Cioffe v. Morris,* 676 F.2d 539, 541 (11th Cir.1982). The government did not expressly consent to litigate this matter; the sole question is whether the government impliedly consented by failing to object or respond. We believe that it did.

"[I]mplied consent under Rule 15(b) will not be found if the [opposing party] will be prejudiced, that is, if the [opposing party] had no notice of the new issue, if [he] could have offered additional evidence in defense, or if the [opposing party] in some other way was denied a fair opportunity to defend." *Id.* at 542. Here, the government was fully aware of Banks' position and simply chose not to respond to Banks' motion. We, therefore, believe that the government impliedly consented to the litigation of the statute of limitations issue for the equitable claims. Because, however, we conclude that the statute of limitations does not apply to claims for equitable relief brought by the government in its sovereign capacity, our conclusion ultimately affords Banks no relief.

[5]The government in this case, contending that the statute of limitations does not apply to equitable claims, sought equitable relief only for Banks' violations that occurred outside section 2462's limitations period.

section 309 of the CWA against the defendant for unpermitted discharge of dredged or fill materials into streams and adjacent wetlands. There, the court applied the concurrent remedy rule to bar the government's claims for equitable relief under similar facts to this case. *Id.* at 693.

The *Windward* court, however, did not address the well-established rule that "an action on behalf of the United States in its governmental capacity ... is subject to no time limitation, in the absence of congressional enactment clearly imposing it," *E.I. du Pont de Nemours & Co. v. Davis,* 264 U.S. 456, 462, 44 S.Ct. 364, 366, 68 L.Ed. 788 (1924); *United States v. Alvarado,* 5 F.3d 1425, 1427 (11th Cir.1993), or the canon of statutory construction that "any statute of limitations sought to be applied against the United States "must receive a strict construction in favor of the Government.' " *Alvarado,* 5 F.3d at 1428.

Incorporating these principles into the analysis, the properly constructed rule is that—absent a clear expression of Congress to the contrary—a statute of limitation does not apply to claims brought by the federal government in its sovereign capacity. The statute is enforced against the government only when the government is acting to vindicate *private* interests, not a sovereign or public interest. *See United States v. Beebe,* 127 U.S. 338, 347, 8 S.Ct. 1083, 1088, 32 L.Ed. 121 (1888).[6]

We conclude, therefore, that the concurrent remedy rule cannot properly be invoked against the government when it seeks equitable relief in its official enforcement capacity. Because Congress did not expressly indicate otherwise in the statutory language of section 2462, its provisions apply only to civil penalties; the government's equitable claims against Banks are not barred.

## II. *Jurisdictional Wetlands*

Banks also disputes that his lots qualify as jurisdictional wetlands. Wetlands are "those areas inundated or saturated by surface or ground water at a frequency and duration sufficient to

---

[6]In *Federal Election Commission v. Williams,* 104 F.3d 237 (9th Cir.1996), the Ninth Circuit applied section 2462 to bar the FEC's action for injunctive relief, citing to *Cope v. Anderson,* 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947). The *Williams* decision—not unlike the *Windward* opinion—failed to distinguish between the application of the statute of limitations to the United States in its private versus its sovereign capacity. No other circuit has addressed this issue.

support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs and similar areas." 33 C.F.R. § 328.3(b). A "wetland" under the CWA must meet the three criteria set out in the Corps' 1987 *Wetlands Delineation Manual:*[7] (1) a prevalence of hydrophytic plants, (2) hydrological conditions suited to such plants, and (3) the presence of hydric soils.

Banks specifically contests the district court's finding that his lots meet the hydric soil criterion; he cites the report of one of the government's experts, Dr. Kruczynski, who was the Environmental Protection Agency's leading regional wetlands biologist. In his report, Dr. Kruczynski concluded: "There is *little or no soil* at this location ... Caprock limestone wetlands are described in the [1989 Corps Delineation Manual] as a Problem Area ... and meet the criteria *despite the lack of hydric soils* when wetland hydrology is present."[8] In the light of other evidence presented at trial, however, we find that the district court's conclusion about the hydric soil criterion was not clearly erroneous.

First, Dr. Kruczynski explained in testimony that he did not spend a lot of time analyzing the soils on Banks' lots for his report: the soils present were clearly hydric and the quantity of soil was not critical in the 1989 Manual, under which he was properly operating at the time. He also testified that he would have classified Banks' lots as wetlands under the 1987 Manual.

The government also presented other expert testimony about soil conditions on Banks' land. For example, Dr. Wade Hurt, a soil scientist who formerly headed the Florida office of the U.S. Department of Agriculture's Soil Conservation Service, testified that Banks' lots, before his clearing

---

[7]Banks challenges the Corps' use of the 1989 version of this Manual, which Congress ultimately banned. Banks argues that the 1989 Manual, which was used to evaluate some of his land, greatly expanded the lands that could be classified as wetlands by allowing certain land—such as caprock limestone—to qualify as regulatable wetlands despite its failure to satisfy all three criteria in the 1987 Manual. The district court, however, found that the evidence proved that Banks' lands met all three of the *1987 Manual's* criteria, rendering Banks' argument moot. Our focus is limited to whether, based on the evidence presented to the district court, its factual findings were clearly erroneous.

[8]At the time of Dr. Kruczynski's analysis, Congress had not yet banned the 1989 Manual. Dr. Kruczynski's analysis was conducted with the 1989 Manual which, unlike the 1987 Manual, incorporates caprock limestone wetlands.

and filling, would have been approximately 30 percent exposed rock, 15 percent non-hydric soils and 55 percent hydric soils. Dr. Ronald Jones, a professor of environmental sciences, and Curtis Kruer, a former Corps employee and biologist with special expertise in water level monitoring and aerial photography interpretation, also testified that Banks' lands were wetlands under the 1987 Manual's criteria.

"If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *see also United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985) (applying clearly erroneous standard to district court's determination that respondent's property met wetlands criteria). Sufficient plausible evidence supports the district court's decision.

### III. *Adjacent Wetlands*

The district court concluded that Banks' lands were wetlands adjacent to navigable, tidal waters and therefore subject to the Corp's regulatory jurisdiction. *See* 33 C.F.R. § 328.3(a)(1), (7) (1995). Banks disputes, however, that his lands are adjacent[9] "wetlands."

Sitting as trier of fact, the district court found that "the Lots are part of a meandering wetland slough traversing Big Pine Key to Pine Channel on the west and Bogie Channel on the east." Banks contests this finding, arguing that his lots—if wetlands at all—are isolated ones, because they are all at least one half mile from either of the navigable channels and have no hydrological relationship with these waters. Banks also contends that Watson Boulevard, a paved road, blocks water flow between Banks' lots and Bogie Channel.

We find that the district court's determination that Banks' lands were adjacent wetlands is not clearly erroneous. Experts testified that a hydrological connection exists between Banks' lands and Pine and Bogie Channels. This connection was primarily through groundwater, but also occurred through surface water during storms. The court also found ecological adjacency based on

---

[9]Adjacent is defined as "bordering, contiguous, or neighboring." 33 C.F.R. 328.3(c) (1995).

the water connections and the fact that the lots serve as habitat for birds, fish, turtles, snakes and other wildlife.

In *United States v. Tilton,* 705 F.2d 429 (11th Cir.1983), we addressed the issue of adjacency under similar facts. Finding the defendant's swamp was an adjacent wetland, we relied on similar evidence to establish hydrological and ecological links with the nearby river. Also, in *Tilton*—as here—the hydrological connection flowed mainly through ground water; the surface water only connected at extreme high tides, such as in hurricanes. *Id.* at 431 n. 1. In the light of *Tilton,* the district court committed no clear error in finding Banks' lands have the hydrological connection needed to qualify as adjacent wetlands.[10]

With regard to Watson Boulevard, man-made dikes or barriers separating wetlands from other waters of the United States do not defeat adjacency. 33 C.F.R. § 328.3(c). The district court therefore properly rejected Banks' argument to the contrary.

IV. *Nationwide Permit 26 (NWP 26)*

Banks argues that even if his lands qualify as jurisdictional, adjacent wetlands, some of his discharge activities were permissible under NWP 26. The CWA provides that the Corps can issue general permits on a state, regional or nationwide basis under certain circumstances. 33 U.S.C. § 1344(e). From 1980 through 1994, the Corps has administered five versions of NWP 26, covering the discharge of material into navigable waters of the United States that are either (1) above the headwaters or (2) are other non-tidal waters that are not part of a surface tributary system to interstate waters or navigable waters.

Banks' position is that the Corps expanded the scope of non-tidal waters into which discharges were authorized by NWP 26 in its 1982 rule, but then contracted the scope in its 1991 rule. Banks contends that some of his discharge activity during the period from 1982 to 1992, therefore, was within the scope of the NWP 26 because the waters into which he discharged met the

---

[10]Because the district court did not err in characterizing Banks' lands part of one continuous wetland, Banks' argument that his lands were outside the scope of regulation because they were adjacent to waters that were themselves wetlands, as described in 33 C.F.R. § 328.3(a)(7), also fails.

definition at that time of "non-tidal waters that are not part of a surface tributary system to interstate waters or navigable waters." The government, however, disputes this contention, arguing that wetlands adjacent to navigable waters—such as Banks' lots—have always been considered included in the term "surface tributary system," and that the Corps has consistently construed and enforced this provision.

The district court correctly rejected Banks' argument that NWP 26 authorized some of his discharges, because Banks failed to carry his burden of persuasion on this issue. *See United States v. Cumberland Farms of Conn., Inc.,* 826 F.2d 1151, 1157 (1st Cir.1987) (holding party seeking to qualify under nationwide permit had burden of persuading court of permit's applicability); *see also Riverside Irrigation District v. Andrews,* 758 F.2d 508, 514 (10th Cir.1985). The Corp's interpretation of its own regulations, not Banks' interpretation, is entitled to substantial deference. *Lyng v. Payne,* 476 U.S. 926, 939, 106 S.Ct. 2333, 2341-42, 90 L.Ed.2d 921 (1986), *reh'g denied,* 478 U.S. 1031, 107 S.Ct. 11, 92 L.Ed.2d 766 (1986). In Banks' particular case, the Corps consistently construed his acts to be outside the scope of NWP 26; as early as 1983, Banks was specifically told by the Corps that his activities required a permit. In 1984, the Corps denied Banks' application for an after-the-fact permit for his discharge activities. Banks has not met his burden to show that any of his lots fell within the scope of NWP 26's "other non-tidal waters that are not part of a surface tributary system to interstate waters or navigable waters" between 1982 and 1992.

We, therefore, conclude that the statute of limitations does not bar the government's claims for equitable relief in this case, and that the district court's finding that Banks' land constituted jurisdictional, adjacent wetlands was not clearly erroneous. We further hold that Banks has failed to demonstrate that some of his activities were permitted by NWP 26. The judgment of the district court is

AFFIRMED.