# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10235

United States Court of Appeals
Fifth Circuit

**FILED**

October 1, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellant

SIERRA CLUB,

Intervenor Plaintiff - Appellant

v.

LUMINANT GENERATION COMPANY, L.L.C.; BIG BROWN POWER COMPANY, L.L.C.,

Defendants - Appellees

Appeals from the United States District Court
for the Northern District of Texas

Before JOLLY, DENNIS, and ELROD, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Today we are presented with claims brought by the United States asserting that Luminant Generation Company and Big Brown Power Company violated the Clean Air Act by failing to obtain a statutorily mandated preconstruction permit for the modification of their facilities. The government seeks civil penalties and injunctive relief. Because the government filed its action more than five years after construction began on the facilities, the

No. 17-10235

district court dismissed the government's civil-penalty and injunctive-relief claims as time barred under Federal Rule of Civil Procedure 12(b)(6). The court also held that the injunctive-relief claims were subject to dismissal under Rule 12(b)(1) for lack of jurisdiction.

We join the other circuits in holding that such an action to recover civil penalties for violation of the Preconstruction requirements for major emitting facilities under 42 U.S.C § 7475(a) must be brought within five years of the first day of the alleged construction period. Because the government waited more than five years to file the instant suit, its legal claims are time barred. Therefore, we affirm dismissal of the legal claims.

But the government also asks for injunctive relief. We hold that the government, in its sovereign capacity, is exempted from the concurrent-remedies doctrine. We reach this conclusion because, generally, government claims, brought in its sovereign capacity, are not subject to any limitations period, *unless* Congress expresses its clear consent thereto. Here, the only applicable statute of limitations makes no reference to injunctive relief. Thus, the statute of limitations does not apply to the government's claims for injunctive relief that are not civil fines, penalties, or forfeitures. Finally, we find no support for the district court's assumption that it was without jurisdiction to entertain any injunctive relief based on past violations of § 7475(a). Of course, that is not to say that the government is entitled to injunctive relief here. We hold only that the district court is not barred by the statute of limitations, nor by the absence of jurisdiction, from further considering whether equitable relief may in some form be available to the government. We remand the injunctive-relief claims to the district court for further consideration.

2

No. 17-10235

I.

The Clean Air Act ("CAA"), through the Prevention of Significant Deterioration Program,[1] mandates the following two "Preconstruction requirements," codified at 42 U.S.C § 7475(a), that are central to this appeal:

> No major emitting facility on which construction is commenced after August 7, 1977, may be constructed . . . unless--
>
> > (1) a permit has been issued for such proposed facility . . . setting forth emission limitations . . . ;
>
> . . . .
>
> > (4) the proposed facility is subject to the best available control technology ["BACT"] for each pollutant subject to regulation . . . .

42 U.S.C. § 7475(a) (2012). In other words, proposed facilities require a permit to begin construction, and those proposed facilities must be "subject to" the BACT in order to get a permit.[2] Each state must adopt a state implementation plan ("SIP") to meet these goals, and Texas's SIP, which the EPA has approved, requires "Permits for New Construction or Modification."[3]

Important here, major emitting facilities built before August 1977 do not escape the Preconstruction requirements because the term "construction" "includes the modification" of a facility. 42 U.S.C. § 7479. "Modification" is defined as "any physical change in, or change in the method of operation of a stationary source which increases the amount of any air pollutant emitted by

---

[1] We have written extensively on the history and intent of the CAA and, more specifically, the Prevention of Significant Deterioration Program. *See CleanCOALition v. TXU Power*, 536 F.3d 469, 471–73 (5th Cir. 2008).

[2] "[B]est available control technology" is not technology in the general sense, but instead "an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation . . . ." 42 U.S.C. § 7479(3).

[3] Specifically, the Texas SIP requires that "[b]efore any actual work is begun on the facility, any person who plans to construct any new facility or to engage in the modification of any existing facility which may emit air contaminants into the air of this state" must get a permit or satisfy certain conditions. 30 Tex. Admin. Code § 116.110.

such source or which results in the emission of any air pollutant not previously emitted." *Id.* § 7411.   In short, all pre-1977 major emitting facilities must comply with the § 7475(a) permit requirements before undergoing a physical change or change in operation that increases pollution above a set floor.

Now for the facts.   We are concerned today with two power-plant facilities built before 1977, each of which houses multiple power-generating units.   The first is the Martin Lake Power Plant, owned and operated by defendant Luminant Generation Company, LLC.   And the second is the Big Brown Power Plant,[4] owned by Big Brown Power Company, LLC, and operated by Luminant (collectively, "the defendants").[5]

The district court did not address and the defendants do not contest on appeal whether the defendants' facilities were required to comply with the § 7475(a) Preconstruction requirements, so we proceed on the basis that they were.[6]  And at this early stage of the litigation, we must assume the defendants constructed their respective facilities without a permit or ensuring the post-construction facilities would be subject to BACT.   In response to these alleged violations, the government took legal action on August 16, 2013, filing suit in Texas federal court.   The government alleged that the defendants violated, and are continuing to violate, the § 7475(a) Preconstruction requirements and Texas SIP by (1) having constructed their facilities without obtaining the

---

[4] Big Brown decommissioned and retired on February 12, 2018.

[5] An environmental organization ranked Martin Lake 8th and Big Brown 72nd on a list of "100 Most-Polluting Power Plants" in the United States.  Jordan Schneider & Julian Boggs, *America's Dirtiest Power Plants*, ENVIRONMENT AMERICA 26, 28 (Sept. 2014), https://environmentamericacenter.org/sites/environment/files/reports/EA_Dirtiest_power_pl ants_scrn_0.pdf.

[6] "We are fundamentally a court of review, not of first analysis." *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 253 (5th Cir. 1988).

No. 17-10235

requisite permit and (2) operating without a permit and continuously failing to meet BACT emission limitations.[7]

Dates are important here. The original complaint alleges nine CAA violations, the following six of which are violations of the § 7475(a) Preconstruction requirements:

> (1) Martin Lake Unit 1 underwent major capital projects from March 4, 2006 – April 13, 2006 without a permit.

> (2) Martin Lake Unit 2 underwent major capital projects from February 16, 2007 – April 5, 2007 without a permit.

> (3) Martin Lake Unit 3 underwent major capital projects from February 26, 2005 – April 2, 2005 without a permit.

> (4) Martin Lake Unit 1 underwent major capital projects from March 1, 2009 – April 1, 2009 *and* "at or near the same time . . . Luminant changed the method of operation of the boiler" without a permit.

> (5) Martin Lake Unit 3 underwent major capital projects from February 10, 2008 – April 5, 2008 *and* "at or near the same time . . . and/or within about a year thereafter, Luminant changed the method of operation of the boiler" without a permit.

> (6) Big Brown Unit 2 underwent major capital projects from October 15, 2005 – November 13, 2005 without a permit.

According to the government, these "unlawful major modifications" of major emitting facilities caused "significant amounts of $SO_2$ and $NO_x$ pollution." As to each claim, the government asks for civil penalties and injunctive relief under 42 U.S.C. § 7413(b).[8]

---

[7] The statutory basis for these claims is 42 U.S.C. § 7475 (2012) (Preconstruction requirements), Texas Administrative Code §§ 116.110, 116.111, 116.160 (2001) (Texas SIP), and 40 C.F.R § 52.21 (1996).

[8] In total, the government raises six § 7475(a) claims, two Title V claims, and one § 114 claim. The plaintiffs have withdrawn their fourth § 7475(a) claim and additional § 114 procedural claim. And although the district court dismissed the Title V claims, the plaintiffs do not argue on appeal that the district court erred in doing so.

No. 17-10235

The defendants moved to dismiss § 7475(a) claims one, two, three, five, and six (not four) as time barred, arguing that the alleged unpermitted construction periods occurred outside the five-year statute of limitations, *i.e.* before August 16, 2008. In response, the government primarily argued that claims under § 7475(a) do not need to be brought within five years of construction because the Preconstruction requirements apply to constructing a facility *and* operating it. Thus, according to the government, each day a post-construction facility operates without a permit or BACT is a new, discrete § 7475(a) violation. In a footnote, the government also argued that it pleaded a construction in claim five—a change in the method of operation of the boiler—that occurred as late as April 2009, which falls within the limitations period. So even if § 7475(a) claims accrue at the time of construction, the government argued that the boiler-operation allegation in claim five should have nevertheless survived.

The district court acknowledged the government's argument that the boiler-operation allegation fell within the five-year period but, without further explanation, found that claim five accrued more than five years before suit was filed. Ultimately, the district court agreed with the defendants that the government's claims "first accrued on the modification start dates," and dismissed claims one, two, three, five, and six (civil penalties and injunctive relief) as time-barred under Federal Rule of Civil Procedure 12(b)(6). The court also found that the claims for injunctive relief, as reflected in the complaint, were subject to dismissal under Rule 12(b)(1).

After the district court's dismissal ruling, only the government's fourth § 7475(a) claim and an additional procedural claim survived. Once Sierra Club intervened as of right, joining the government as plaintiff (collectively, "the plaintiffs"), the plaintiffs then filed a second amended complaint withdrawing the surviving claims. The district court entered final judgment for the

No. 17-10235

defendants. The plaintiffs now appeal the district court's judgment dismissing all claims. But they challenge only the dismissal of the first, second, third, fifth, and sixth § 7475(a) claims.

## II.

We review dismissals under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) de novo. *Zephyr Aviation, L.L.C. v. Dailey*, 247 F.3d 565, 570 (5th Cir. 2001). Dismissal under Rule 12(b)(6) based on statute of limitations is proper only "where it is evident from the [complaint] that the action is barred and the [complaint] fail[s] to raise some basis for tolling." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). It is well established that "the limitations period runs from the moment a plaintiff's claim 'accrues.'" *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015).

## III.

We start our review by addressing two preliminary matters. First, we hold that any challenge to the district court's holding that the relevant unpermitted construction periods fell outside the five-year statute of limitations has been abandoned.[9] *See Edwards v. Johnson*, 209 F.3d 772, 775 n.1 (5th Cir. 2000); *see also Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014). For purposes of this appeal, each of the unlawful construction periods alleged in the relevant claims took place more than five years before the government filed suit.

---

[9] In its reply brief, Sierra Club re-urges the government's argument made below that the complaint's fifth claim alleges a construction period that began within the five-year limitations period. But that argument is not presented in either the government's or Sierra Club's opening briefs. Moreover, Sierra Club, who now pushes the argument at this late hour, explains in its opening brief that the complaint "alleged [the defendants] made six [unpermitted] modifications," seemingly ignoring the additional boiler-operation modification in claim five. (Emphasis added). Therefore, we find this argument to be too little, too late.

Second, the parties do not dispute that 28 U.S.C § 2462 generally bars all CAA claims for the enforcement of any civil fine, penalty, or forfeiture that accrued more than five years before suit was filed. *See United States v. Marine Shale Processors*, 81 F.3d 1329, 1357 (5th Cir. 1996). The government filed suit on August 16, 2013, so the plaintiffs may enforce a civil fine, penalty, or forfeiture only for violations accruing on or after August 16, 2008. Thus, the legal question presented today is when does a § 7475(a) violation accrue as a matter of law, i.e. what event(s) trigger the running of the statute of limitations. The defendants contend that a facility modified without a preconstruction permit violates § 7475(a) as a one-time occurrence: the moment construction begins without a preconstruction permit. The five-year clock then begins to tick away, never to be restarted for a § 7475(a) claim related to that unpermitted construction period. The plaintiffs argue, on the other hand, that a facility modified without a permit continuously violates § 7475(a) anew each day it operates post-construction. Stated differently, a new five-year clock begins to run each day a modified facility *operates* without a permit. Under the plaintiffs' interpretation, the defendants could be held liable for civil penalties for each day their modified facilities operated without a permit on or after August 16, 2008; on the other hand, the defendants' interpretation means that all of the claims for civil fines, penalties, or forfeitures are time barred.

Thus, we will now proceed to address when § 7475(a) violations occur as a matter of law, which determines the date the statute of limitations begins to run on the respective claims. Once that date has been established, we will decide whether any of the civil-penalty claims on appeal are time barred. In the light of that holding, we will then turn to the availability of injunctive relief. Taking the issues in that order, we begin.

No. 17-10235

A.

Civil Penalties

The parties' disagreement over when § 7475(a) claims accrue focuses on the point in time that a complete violation of the Preconstruction requirements occurs: whether, as the defendants argue, only at the moment unpermitted construction commences or, as the government argues, also *each day* thereafter that the plant *operates* without a permit post-construction. *See United States v. Core Labs., Inc.*, 759 F.2d 480, 482 (5th Cir. 1985) ("[T]he date of the underlying violation has been accepted without question as the date when the claim first accrued, and, therefore, as the date on which the statute [of limitations] began to run."). The district court held that a § 7475(a) claim accrues "when construction or modification begins without the permit in hand." Unsurprisingly, the defendants urge us to accept that clear and relatively early point in time. The plaintiffs, however, argue that a discrete violation occurs at the moment unpermitted construction begins *and* each day thereafter that the facility operates without a permit.[10]

We are not the first appellate court to consider whether the Preconstruction requirements apply also to the daily operation of a facility, such that the operation of an unpermitted facility is a fresh, daily violation of § 7475(a). The Third, Seventh, Eighth, Tenth, and Eleventh Circuits each have

---

[10] Apparently, the government's argument would mean that each day an unpermitted facility is *not* in operation does not violate § 7475(a) anew. In any event, the underlying point is that operation is one thing, and construction is another. The statute we are interpreting, § 7475(a), is a statute relating to construction only, not to post-construction operation.

On a related note, the plaintiffs do not argue that a new § 7475(a) claim accrues each day of unpermitted construction. *See Sierra Club v. Oklahoma Gas & Elec. Co.*, 816 F.3d 666, 671–74 (10th Cir. 2016) (rejecting argument "that the statute of limitations resets on each day of unpermitted construction"). Thus, we do not consider that theory. Today, we decide only whether a § 7475(a) violation is a one-time event occurring at the moment construction begins or whether operating a modified facility without having obtained a preconstruction permit also violates the statute post-construction.

held that a violation of the § 7475(a) Preconstruction requirements occurs only at some point during the construction period, and not to the subsequent *operation* of the modified facility. *Sierra Club v. Oklahoma Gas & Elec. Co.*, 816 F.3d 666, 674 (10th Cir. 2016); *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 284 (3d Cir. 2013); *United States v. Midwest Generation*, LLC, 720 F.3d 644, 647 (7th Cir. 2013); *Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1018 (8th Cir. 2010).; *Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 502 F.3d 1316, 1322 (11th Cir. 2007). For the reasons that follow, we will follow the other circuits.

We quite naturally begin with the text of § 7475(a).[11] "Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006). Starting with the title of the statute, it reads "Preconstruction requirements," not "Operating requirements" nor even "Preconstruction *and* Operating requirements." Then scrolling down to the text of subsection a, Congress tells us that the § 7475(a) requirements must be met before a facility "may be constructed." As we see it, this language can be read only one way: the Preconstruction requirements are terms and conditions with which the facility must comply in order for the facility to begin construction. They are not requirements that arise at a point in time after the facility has begun

---

[11] We repeat, § 7475(a) requires:

No major emitting facility on which construction is commenced after August 7, 1977, may be constructed . . . unless--

> (1) a permit has been issued for such proposed facility . . . setting forth emission limitations . . . ;

. . . .

> (4) the proposed facility is subject to the best available control technology ["BACT"] for each pollutant subject to regulation . . . .

construction or resumed operation. By its plain language, § 7475(a) itself does not impose post-construction operational obligations on facilities.[12]

The plaintiffs point us to other related provisions of the CAA in support of their position, but those CAA sections do not change the plain meaning of § 7475(a). For example, there are two CAA provisions that explicitly refer to the operation of a facility. *See, e.g.*, 42 U.S.C § 7411(e) ("[I]t shall be unlawful . . . to operate such source in violation of any standard of performance applicable to such source."); *id.* § 7661a(a) ("[I]t shall be unlawful for any person to . . . operate an affected source . . . except in compliance with a permit issued by a permitting authority . . . ."). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972).

Although the statutory text of § 7475(a) leads us to a clear answer, i.e. § 7475(a) violations do not extend into post-construction operation, the plaintiffs suggest that our jurisprudence offers a nod to their view. In *United States v. Marine Shale Processors*, the government sued Marine Shale, a hazardous waste-treatment facility, for, inter alia, "operating several minor emission sources without a permit in violation of the [CAA]." 81 F.3d at 1352. Marine Shale argued in defense that "because emissions from each minor source began more than five years before the United States filed suit," those

---

[12] Our conclusion that § 7475(a) imposes only preconstruction obligations on a facility does not conflict with our opinion in *Sierra Club, Inc. v. Sandy Creek Energy Associates, L.P.*, 627 F.3d 134, 141 (5th Cir. 2010). In *Sandy Creek*, we held that a violation of 42 U.S.C § 7414, which has statutory language similar to § 7475(a), occurs as long as construction is ongoing. As we have noted, the plaintiffs in this case do not argue that a facility violates § 7475(a) each day it constructs without a permit; instead, they argue a facility violates § 7475(a) each day it operates without a permit. Our opinion in *Sandy Creek* does not speak to the question of operational obligations.

claims were barred by the five-year statute of limitations. *Id.* at 1357. A panel of this court disagreed, holding that because 42 U.S.C § 7413(b), the civil-enforcement statute, "contemplates a fine for each day a minor source operates in violation of law," minor-source emissions from unpermitted facilities occurring within the five-year limitations period are actionable even if the unpermitted emissions began more than five years before suit was filed. *Id.* Importantly, § 7413(b) is the civil-enforcement statute for violation of § 7475(a).[13]

*Marine Shale* does not, however, control our decision today. As *Marine Shale* explained, "The CAA statutory scheme contemplates at least two different types of air permits unhappily named 'preconstruction permits' and 'operating permits,'" and "[t]he distinction between [them] is critical." *Id.* at 1355–56.[14]   *Marine Shale* addressed a violation concerning a facility's *operation* without a permit. *See, e.g.*, *id.* at 1352 (referring only to "permit"

---

[13] The civil-enforcement statute, 42 U.S.C. § 7413(b), reads:

The Administrator shall . . . commence a civil action for a permanent or temporary injunction, or to assess and recover a civil penalty of not more than $25,000 per day for each violation, or both, in any of the following instances:

> (1) Whenever such person has violated, or is in violation of, any requirement or prohibition of an applicable implementation plan or permit. . . .

> (2) Whenever such person has violated, or is in violation of, any other requirement or prohibition of this subchapter, section 7603 of this title, subchapter IV-A, subchapter V, or subchapter VI of this chapter . . . .

> (3) Whenever such person attempts to construct or modify a major stationary source in any area with respect to which a finding under subsection (a)(5) of this section has been made.

[14] The *Marine Shale* panel noted that "confusion easily result[s]" in distinguishing between the two types of permits "from the fact that preconstruction permits often include limits upon a source's operations." 81 F.3d at 1356. For the reasons explained, however, there is no indication that § 7475(a) per se limits a source's operations. That is not to say that a preconstruction permit may never impose such limits. But of course, we are here because the defendants never obtained a permit.

and "air permit").[15]  In contrast today, however, we are solely addressing the preconstruction permit mandated by § 7475(a).  Moreover, in the context of statute of limitations, the *Marine Shale* panel addressed only the government's claim that Marine Shale failed to get a permit for operating *minor*-source emissions; and § 7475(a) applies only to *major*-emitting facilities.  So, there is no indication that the *Marine Shale* opinion, in discussing the statute-of-limitations issue there, was considering preconstruction permits under § 7475(a).[16]  These distinctions between *Marine Shale* and our case illustrate the complexity of environmental statutes and regulations, as well as the importance in not confusing the myriad permits, pollutants, and prohibitions that are implicated in regulating the environment.

Accordingly, we conclude that *Marine* Shale does not address the case we have today, and considering the clear statutory language of § 7475(a), we hold that a violation of the Preconstruction requirements under § 7475(a) occurs on the first day of unpermitted construction and the violation does not extend into operation.  Let us be clear:  any claim asserted under § 7475(a) accrues at the moment unpermitted construction commences.

Finally, the plaintiffs argue that, even if the violation of § 7475(a) is a single occurrence at the commencement of construction, the Texas SIP construction-permit requirements obligate facilities to apply BACT during

---

[15] As to one of the permits at issue, Marine Shale "in effect conced[ed]" that it was a "preconstruction permit," 81 F.3d at 1356, but the government's position is unknown.  And in any event, it is uncertain whether that preconstruction permit was the absent permit at the center of the statute-of-limitations dispute.  Indeed, the government here refers to the permit at issue in *Marine Shale* as "another type of [CAA] permit."

[16] Other courts have eschewed *Marine Shale*'s conclusory analysis in the context of the § 7475(a) statute-of-limitations issue.  *See, e.g.*,  *United States v. Murphy Oil USA, Inc.*, 143 F. Supp. 2d 1054, 1082–83 (W.D. Wis. 2001); *see also* Ivan Lieben, *Catch Me If You Can - the Misapplication of the Federal Statute of Limitations to Clean Air Act Psd Permit Program Violations*, 38 ENVTL. L. 667, 692–93 (2008) ("Without any useful discussion of much significance to the PSD statute of limitations issue, the [*Marine Shale*] court also found that the statute of limitations did not apply to the minor source permitting violations.").

operation.[17] *See Nat'l Parks Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 480 F.3d 410, 418–19 (6th Cir. 2007) (holding the Tennessee SIP imposed ongoing operational obligations and avoiding the necessity of any statutory analysis of § 7475 itself). We have previously held, however, that "the preconstruction requirements set forth in [Title 30 of the Texas Administrative Code, section 116.111(a)], such as evidence that the facility will utilize the best available control technology, are preconditions for *granting* a preconstruction permit." *CleanCOALition v. TXU Power*, 536 F.3d 469, 477 (5th Cir. 2008) (emphasis in original). That is to say, Texas SIP section 116.111(a) instructs facilities what they must do to get a permit, not what obligations are imposed on the continuing operations of the facility.

We sum up what we have decided: Section 7475(a) violations occur on the first day of construction, and the Texas SIP does not alter that holding. As we have said, for purposes of this appeal, each construction period that the plaintiffs say the defendants embarked upon in violation of § 7475(a) commenced more than five years before the government filed suit to recover civil penalties. Thus, the government's claims for civil fines, penalties, and forfeitures are time barred under the five-year statute of limitations set in 28 U.S.C. § 2462.[18] The district court, therefore, did not err in dismissing claims one, two, three, five and six asking for that legal relief.

---

[17] The plaintiffs point to Texas SIP § 116.111(a)(2)(C–D), under which a "new construction or modification" permit application must include information demonstrating:

> (C) Best available control technology (BACT). The proposed facility will utilize BACT . . . .
> (D) New Source Performance Standards (NSPS). The emissions from the proposed facility will meet the requirements of any applicable NSPS . . . .

30 Tex. Admin. Code § 116.111(a)(2)(C–D) (2001) (emphasis added).

[18] The plaintiffs do not appeal the district court's ruling on the applicability of a tolling agreement between the parties.

No. 17-10235

B.

Injunctive Relief

In addition to asking for civil penalties under 42 U.S.C § 7413(b), the government also requests injunctive relief.[19] And the plain language of § 2462 does not explicitly bar the claims for injunctive relief.[20] Nevertheless, the district court dismissed the government's equitable claims on two bases. First, the district court held that because the legal claims are time barred by § 2462, the injunctive-relief claims are also barred under the concurrent-remedies doctrine. And second, the court held that "Congress did not provide for injunctive relief for past violations in the [CAA]." On appeal, we limit our analysis to whether the district court erred in dismissing the injunctive-relief claims for those two reasons.

1.

Concurrent-Remedies Doctrine

The Supreme Court has long recognized that "when the jurisdiction of the federal court is concurrent with that of law, or the suit is brought in aid of

---

[19] At oral argument, counsel for the government was asked why the government had chosen to bring its claims expressly and only under § 7475 of the CAA instead of an alternative CAA section perhaps more friendly to the operational claims it seeks to assert here. Counsel explained that requiring the defendants to comply with § 7475(a) was the only way to impose BACT emission limitations on their respective facilities for certain pollutants.

[20] Under 28 U.S.C. § 2462:

[A]n action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . .

So injunctive-relief claims are barred under § 2462 if they are a "penalty." The defendants concede they have not *yet* argued to the district court that the injunctive relief sought here is a penalty. And we do "not consider issues raised for the first time on appeal except in extraordinary instances when such consideration is required to avoid a miscarriage of justice." *Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Engineers*, 217 F.3d 393, 398 (5th Cir. 2000). This case presents no such extraordinary instance. For the life of this case, the defendants have been free to argue to the district court that the relief requested was a penalty; but they have not yet done so. *See, e.g.*, *S.E.C. v. Bartek*, 484 F. App'x 949, 956 (5th Cir. 2012) (affirming certain equitable remedies are penalties under § 2462).

15

a legal right, equity will withhold its remedy if the legal right is barred by the local statute of limitations." *Russell v. Todd*, 309 U.S. 280, 289 (1940); *see also Cope v. Anderson*, 331 U.S. 461, 464 (1947); *Nilsen v. City of Moss Point, Miss.*, 674 F.2d 379, 387 (5th Cir. 1982), *on reh'g*, 701 F.2d 556 (5th Cir. 1983).  For the reasons we have explained, § 2462 clearly bars the legal claims here.  The question is whether the government's equitable claims are also barred.

At the outset of our analysis, we should make clear that, in the case of private litigants, the concurrent-remedies doctrine appears to be alive, well, and strong.  For example, here, the concurrent-remedies doctrine may properly be invoked against Sierra Club, a private party acting on its own behalf.  *See, e.g.*, *Oklahoma Gas & Elec. Co.*, 816 F.3d at 675.  Indeed, to allow equitable claims to proceed where the legal claims are time barred is counter-intuitive to general legal thought and reasoning.  So we make clear, we address a very narrow set of circumstances:  the sovereign acting in its sovereign capacity when it has not legislatively conceded, in any explicit terms, that a time bar may be applied to its equitable claims.  It is that set of narrow circumstances that informs the following discussion.

The plaintiffs argue that the concurrent-remedies doctrine does not bar their equitable claims for two reasons.  First, Sierra Club argues that the concurrent-remedies doctrine does not apply to actions under the CAA because the civil-penalty and injunctive-relief provisions of the CAA are not concurrent.  But courts agree "civil penalties and equitable relief . . . are concurrent [where] 'an action at law or equity could be brought on the same facts.'"  *Tennessee Valley Auth.*, 502 F.3d at 1327 (*quoting United States v. Telluride Co.*, 146 F.3d 1241, 1248 n.12 (10th Cir. 1998)).  The parties do not dispute that the legal and equitable claims appealed here are brought on the same facts.  The concurrent-remedies doctrine, therefore, is not inapt to this CAA action.  *See Otter Tail Power*, 615 F.3d at 1018–19; *Tennessee Valley Auth.*, 502 F.3d at 1327.

No. 17-10235

Second, the plaintiffs urge us to follow the Tenth and Eleventh Circuits and acknowledge an exception to the concurrent-remedies doctrine in actions brought by the government in its sovereign capacity. *Telluride*, 146 F.3d at 1248–49 (analyzing application of general statute of limitations, § 2462, to Clean Water Act claim asking for legal and equitable relief); *United States v. Banks*, 115 F.3d 916, 919 (11th Cir. 1997) (same). This issue is of first impression for our court, and there is, frankly, minimal precedent to guide our analysis.[21]

The Supreme Court has been unequivocal in its general demand that equitable relief is prohibited when a concurrent legal remedy is barred. *See, e.g.*, *Russell*, 309 U.S. at 289. But the Supreme Court has not had occasion to apply that doctrine to an action brought by the government in its sovereign capacity. Furthermore, the Supreme Court has been equally clear in holding that "an action on behalf of the United States in its governmental capacity . . . is subject to no time limitation, in the absence of congressional enactment clearly imposing it." *E. I. Du Pont De Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924); *see also United States v. P/B STCO 213*, 756 F.2d 364, 368 (5th Cir. 1985) ("The sovereignty of the United States exempts it from all periods of

---

[21] In *Federal Election Commission v. Williams*, the Ninth Circuit, finding the Federal Election Commission's legal claims barred by § 2462, applied the concurrent-remedies doctrine to also bar the Commission's equitable claims. 104 F.3d 237, 240 (9th Cir. 1996). But in our view, there is no circuit split on the narrow issue before us because the Ninth Circuit did not consider that the government, acting in its sovereign capacity, is subject to no time limitation in the absence of clear consent. *See Banks*, 115 F.3d at 919 n.6 ("[*Williams*]. . . failed to distinguish between the application of the statute of limitations to the United States in its private versus its sovereign capacity. No other circuit has addressed this issue."). The Ninth Circuit held only that "because the claim for injunctive relief is connected to the claim for legal relief, the statute of limitations [§ 2462] applies to both." *Williams*, 104 F.3d at 240.

limitations except where, by legislation, it expressly has consented to a time bar.").[22]

It is somewhat problematic to reconcile these two rules when they coincide in a single case. Even though the government has subjected itself to the limitations imposed by § 2462 in CAA actions, the application of that statute "must receive a strict construction in favor of the Government." *E.I. Dupont*, 264 U.S. at 462. To apply the concurrent-remedies doctrine here and thus bar the government's equitable claims would exceed those explicit boundaries of sovereign consent. After all, the government has expressly consented to a statutory time bar only in "the enforcement of any civil fine, penalty, or forfeiture." 28 U.S.C. § 2462. We therefore can find no error in the Tenth and Eleventh Circuits' decision to exempt actions brought by the government in its sovereign capacity from the application of the concurrent-remedies doctrine. In short, Congress has given no express consent. Thus, the district court erred in dismissing the government's equitable-relief claims under Rule 12(b)(6) based on the concurrent-remedies doctrine.

## 2.

### Jurisdiction

The district court also dismissed the injunctive-relief claims on jurisdictional grounds under Rule 12(b)(1). The district court "assume[d]" that its "jurisdiction over Clean Air Act claims does not extend to injunctive relief" because "Congress did not provide for injunctive relief for past violations in the [CAA] but did provide a remedy for Prevention of Significant Deterioration violations before construction or modification" under 42 U.S.C § 7477.[23]

---

[22] This rule "rests upon the general principle of policy applicable to all governments that the public interest should not be prejudiced by the default or negligence of public officers." *Bowers v. New York & Albany Lighterage Co.*, 273 U.S. 346, 349–50 (1927).

[23] Section 7477 states:

No. 17-10235

We have been referred to no authority that § 7477 is meant to displace the enforcement authority provided under § 7413.[24]  *See Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 490 (2004) (referring to § 7413 and § 7477 as "two independent CAA provisions"); *Miller v. French*, 530 U.S. 327, 340 (2000) ("[W]e should not construe a statute to displace courts' traditional equitable authority absent the 'clearest command,' or an 'inescapable inference' to the contrary . . . ." (citation omitted)).

Nor can we agree with the district court's broad holding that it simply lacks jurisdiction to consider any aspect of the injunctive relief requested here. Section 7413(b) plainly gives district courts jurisdiction to restrain a violation, require compliance, and award any other appropriate relief whenever a person has committed a § 7475 violation.  The district court cited *United States v. EME*

---

The Administrator shall, and a State may, take such measures, including issuance of an order, or seeking injunctive relief, as necessary to prevent the construction or modification of a major emitting facility which does not conform to the requirements of this part . . . .

42 U.S.C. § 7477.

[24] We repeat, § 7413(b) states:

The Administrator shall . . . commence a civil action for a permanent or temporary injunction, or to assess and recover a civil penalty of not more than $25,000 per day for each violation, or both, in any of the following instances:

> (1) Whenever such person *has violated*, or is in violation of, any requirement or prohibition of an applicable implementation plan or permit. . . .
>
> (2) Whenever such person *has violated*, or is in violation of, any other requirement or prohibition of this subchapter, section 7603 of this title, subchapter IV-A, subchapter V, or subchapter VI of this chapter . . . .

. . . .

Any action under this subsection may be brought in the district court of the United States for the district in which the violation is alleged *to have occurred*, or is occurring . . . and such court shall have jurisdiction to restrain such violation, to require compliance, to assess such civil penalty, to collect any fees owed . . . , and to award any other appropriate relief.

42 U.S.C. § 7413(b) (emphasis added).

19

No. 17-10235

*Homer City Generation, L.P.* as the basis for its assuming the absence of jurisdiction in this case.    That case, in a critical way, is factually distinguishable from the case we consider today.  The Third Circuit addressed injunctive relief against *former* owners of a facility who "cannot violate the Act in the future."[25]  727 F.3d at 292.  The district court also relied on the Seventh Circuit's opinion in *United States v. Midwest Generation, LLC*.  But that case appears to have applied the concurrent-remedies doctrine, *see United States v. U.S. Steel Corp.*, 16 F. Supp. 3d 944, 950–51 (N.D. Ind. 2014), which, in this case, we have found does not apply to the United States as a sovereign.  Thus, the district court erred when it assumed that injunctive relief was beyond the authority granted in the statute.

This opinion, however, should not be read as either favoring or disfavoring the grant of equitable relief.  We hold only that the statute of limitations that barred the legal relief does not itself bar equitable relief unless it constitutes a penalty.  On remand, the district court must further consider whether *any* equitable relief is appropriate and proper under the legal and factual circumstances of this case in which the legal relief has been time barred.[26]  We recognize that we are not giving the district court much guidance in this task.  Nevertheless, this case does come to us from a dismissal under 12(b)(6) and 12(b)(1); and here the question of injunctive relief when no legal relief is available, is not an up or down question, especially since we have held

---

[25] The Third Circuit "express[ed] no opinion" on whether injunctions are "available in general to remedy ongoing harm from wholly past violations."  *Homer City,* 727 F.3d at 291 n.19.  And as to current owners, the court there explained that the government could, *after* completion of a facility's modification, "obtain an injunction requiring the owner and operator to comply with the PSD requirements." *Id.* at 289.

[26] In considering whether equitable relief, if any, is available, we simply note without further comment the Seventh Circuit's holding, "Once the statute of limitations expired, [the defendant-facility] was entitled to proceed as if it possessed all required construction permits."  *Midwest Generation*, 720 F.3d at 648.

No. 17-10235

that the doctrine of concurrent remedies does not apply against the sovereign. Perhaps the answer to this knotty question of injunctive relief will reveal itself after a full hearing and the presentations of the parties.  And we hope that we are not being too cowardly when we sincerely wish the district court good luck.

IV.

Now, we briefly summarize our holdings:  The Preconstruction requirements under § 7475(a) impose a one-time obligation on facilities to get a permit before they begin construction.  So when a facility violates § 7475(a), it violates the statute on that singular occurrence when construction commences without a permit in hand.  Section 7475(a) actions for the enforcement of any civil fine, penalty, or forfeiture must be brought within five years.  The plaintiffs, having waited more than five years, are time barred from pursing § 7475 claims for civil fines, penalties, and forfeitures.

Whether such injunctive relief is, in any of its aspects, considered a penalty has not been addressed in this appeal.  *See supra* note 19.  Because the government has brought this suit in its sovereign capacity, those injunctive-relief claims—which are determined not to be penalties under § 2462—are not subject to the limitation bar here.  Thus the concurrent-remedies doctrine itself does not bar the government from pursuing non-penalty claims for injunctive relief.  Moreover, we find no support for the district court's holding that its "jurisdiction" does not "extend to injunctive relief" based on past violations of the CAA.[27]

We repeat that we do not prejudge whether equitable relief is available here.  Inasmuch as this case comes to us on a motion to dismiss, there is more

---

[27] The role Sierra Club seeks to play in this litigation is unclear.  But in any event, we have noted that the concurrent-remedies doctrine is properly applied as to it.  So we remand the injunctive-relief claims to the district court, but once there, only the government may pursue them.  We make no suggestion as to whether the government may pursue injunctive relief as to the now-closed Big Brown plant.

left to be done on remand.  We leave it to the district court on remand to consider further the availability of equitable relief as we have noted above. The judgment of the district court is therefore

AFFIRMED in part, REVERSED in part,

and REMANDED.

No. 17-10235

JENNIFER WALKER ELROD,    Circuit Judge, concurring in part and dissenting in part:

I concur in full with the portion of the majority opinion that holds—in alignment with all other circuits to consider the question—that a violation of 42 U.S.C. § 7475(a) occurs only at the time of a facility's unpermitted construction or modification, and that the operation of an unpermitted facility is not itself a violation of the statute. As such, I concur with the majority opinion's determination that the appellants' civil-penalty claims are now time-barred by 28 U.S.C. § 2462. I also concur with the majority opinion's determination that the concurrent-remedies doctrine bars Sierra Club's claims for injunctive relief.

I dissent from the majority opinion's decision to remand this case for further consideration of the government's claims for purported injunctive relief. It is a well-settled principle that "[t]he function of an injunction is to afford preventative relief, not to redress alleged wrongs which have been committed already." *Lacassagne v. Chapuis*, 144 U.S. 119, 124 (1892). Because the statute is concerned only with the construction or modification of a facility, and not its subsequent operation, there is no ongoing or future unlawful conduct to enjoin. As the Supreme Court has explained, granting an injunction without alleging an ongoing or future violation of the statute "makes a sword out of a shield." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) (Scalia, J.).

The fact that the government applies the term "injunction" to its requested remedies does not mean those remedies are actually injunctive. In remanding this case, the majority opinion focuses on the label and ignores the substance. The remedies being sought by the government simply cannot properly be classified as injunctive. The remedies are being sought to redress

23

No. 17-10235

alleged past wrongs, and they are punitive in nature. As such, they are time-barred, no matter what label they may be masquerading under. The district court was correct to deny the government's request for injunctions designed to redress wrongs that are alleged to have occurred wholly in the past, and there is no need for this case to be remanded for further consideration.

## I.

The majority opinion explains why a violation of § 7475(a) can occur only at the time of construction or modification. Understanding that point is critical to understanding why the government's requested relief is not properly categorized as injunctive. That categorization—whether the relief is or is not injunctive—is important in a case such as this, where the government has failed to prosecute its case for an alleged failure to obtain a permit within the applicable statute of limitations. As a result of the government's delay, the court cannot enforce "any civil fine, penalty, or forfeiture, pecuniary or otherwise," related to that failure to obtain a permit. 28 U.S.C. § 2462.[1]

The government's brief lacks clarity as to the specific remedies it seeks under the banner of "injunctive relief." However, at oral argument, the government explained that the injunctive relief it seeks would take the form of compelling the appellees to: (1) apply for permits (which presumably would only be granted with an update of their emission technologies); and (2) "clean up the pollution" (which presumably refers to the surrender of cap-and-trade

---

[1] During oral argument, the government conceded, as it rightly should have, that if this court determines that a § 7475(a) violation occurs at the time of construction or modification, then 28 U.S.C. § 2462 would bar the government from seeking penalties for the alleged permitting violations at issue here. Oral Argument at 37:50, *United States v. Luminant Generation Co., L.L.C.* (No. 17-10235), http://www.ca5.uscourts.gov/oral-argument-information/oral-argument-recordings.

emissions credits requested in their complaint).[2]   Unfortunately for the government, neither of those remedies are properly categorized as injunctive.

First, the operation of the facilities without proper permitting under § 7475(a) is not a violation of the statute.  As such, the court cannot use an injunction to compel the appellees to stop operations until they receive such permitting.  "The sole function of an action for injunction is to forestall future violations," *United States v. Oregon State Med. Soc'y*, 343 U.S. 326, 333 (1952), and unpermitted operation simply does not violate the statute.  *See also Citizens for a Better Env't*, 523 U.S. at 109 (1998) ("Because respondent alleges only past infractions of [the relevant statute], and not a continuing violation or the likelihood of a future violation, injunctive relief will not redress its injury.").  Thus, as Judge Easterbrook has said for the Seventh Circuit (and which the majority opinion here notes without offering comment): "[o]nce the statute of limitations expired, [the defendant-facility] was entitled to proceed as if it possessed all required construction permits." *United States v. Midwest Generation, LLC*, 720 F.3d 644, 648 (7th Cir. 2013).

Second, to the extent that the government seeks for the appellees to be compelled to surrender their emission allowances to offset the additional pollution caused by their past failure to obtain a permit, that requested remedy cannot properly be considered injunctive either.  Such a remedy does not prevent future permitting infractions.  Instead, that remedy would quite clearly be a form of redress for operating today with permitting infractions that occurred in the past.  As the Third Circuit correctly held in a similar case, "[s]uch injunctive cap-and-trade relief is the equivalent of awarding monetary relief and could not be reasonably characterized as an injunction. . . . It would

---

[2] Oral Argument at 7:30, *United States v. Luminant Generation Co., L.L.C.* (No. 17-10235), http://www.ca5.uscourts.gov/oral-argument-information/oral-argument-recordings.

amount to little more than an end-run around the five-year statute of limitations on any civil fine, penalty, or forfeiture." *United States v. EME Homer City Generation, LP*, 727 F.3d 274, 295–96 (3rd Cir. 2013) (citations omitted).

Thus, both of these so-called forms of injunctive relief are really just time-barred penalties in disguise. *See, e.g., Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1643–45 (2017) (identifying the hallmarks of a 28 U.S.C. § 2462 penalty as: (1) a violation committed against the government rather than against an aggrieved individual; and (2) a remedy that is imposed, at least in part, for punitive rather than solely compensatory purposes).[3]

There may be good policy arguments for prohibiting the operation of unpermitted facilities in addition to prohibiting their unpermitted construction or modification. On the other hand, there may be good policy arguments for grandfathering in changes to emissions requirements by tying them to each facility's construction or modification. *See generally Homer City*, 727 F.3d at 289–90 (summarizing arguments as to why Congress may or may not have drafted the statute to apply only to a facility's construction or modification). However, in reaching our determination, such an argument is beyond the proper role of Article III courts. *See Rodriguez v. United States,* 480 U.S. 522, 526 (1987) (noting that when statutory language is clear, the courts should not examine additional considerations of policy that may or may not have influenced the lawmakers). Simply put, as it is currently written, 42 U.S.C. § 7475(a) cannot be read to permit the government to obtain the remedies it is requesting when it has waited longer than five years to initiate proceedings

---

[3] The Supreme Court decided *Kokesh* during the pendency of this appeal. On remand, the district court is of course free to consider the so-called injunctive relief sought by the government through the helpful lens of *Kokesh*.

No. 17-10235

alleging unpermitted construction or modification. If that outcome needs to be changed, the remedy properly lies with Congress and not with the courts.

## II.

Unfortunately, in its failure to remove the mask from the government's requested forms of relief and call them the time-barred penalties that they are, the majority opinion unnecessarily dives into a circuit split on the question of whether the courts should judicially create a sovereign actor exception to the judicially-created doctrine of concurrent-remedies. *Compare United States v. Banks*, 115 F.3d 916, 918–19 (11th Cir. 1997), *and United States v. Telluride Co.*, 146 F.3d 1241, 1248–49 (10th Cir. 1998), *with Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996). By siding with the Tenth and Eleventh Circuits in creating such an exception, the majority opinion throws itself behind a holding that is, at the very least, questionable.[4] I would not be so hasty. At this juncture, I see little wisdom in rushing headlong to judicially-create yet another doctrinal exception that will generate a possibility of never-ending liability in tension with statutory language. *See Delek Ref., Ltd. v. Occupational Safety & Health Review Comm'n*, 845 F.3d 170, 177 (5th Cir. 2016). As such, I would not in this case reach the question of whether a

---

[4] The *Banks* opinion (which the *Telluride* court adopts without additional analysis) rests on a shaky foundation for at least two different reasons. First, the *Banks* opinion is built around an assertion that the Supreme Court has since contradicted, which is that "[t]he plain language of section 2462 does not apply to equitable remedies." *Banks*, 115 F.3d at 919. Except that it does. *See Kokesh*, 137 S. Ct. at 1645 (holding that the SEC's disgorgement actions are time-barred as a penalty under 28 U.S.C. § 2462); *Tull v. United States*, 481 U.S. 412, 424 (1987) (noting that disgorgement is traditionally considered an equitable remedy). Second, the *Banks* opinion (and all those that adopt it without further analysis, to include this majority opinion) appears to conflate two entirely distinct but nuanced concepts: statutes of limitations, from which the sovereign remains exempt unless it has clearly bound itself, and the scope of equity's reach, which is cabined by the concurrent-remedies rule. *See also United States v. U.S. Steel Corp.*, 966 F. Supp. 2d 801, 812–16 (N.D. Ind. 2013) (reversed in part on reconsideration on other grounds) (analyzing how the *Banks* opinion appears to have conflated these distinct concepts, and noting that its holding has since been parroted by many other courts).

sovereign actor exception should be created for the concurrent-remedies doctrine.

## III.

In remanding this case, the majority opinion takes great care to stress that further review of the facts may lead to the conclusion that the government's remaining claims for "injunctive" relief are nonetheless time-barred or otherwise inappropriate. However, I believe that this is all but a foregone conclusion. I would affirm the district court's judgment in full and without remand. Therefore, I respectfully dissent in part.